**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GREATER BOSTON LATINO NETWORK and BRAZILIAN WORKER CENTER, INC., <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD M. LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendants. | Civil Action No. 26-10472 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      The Fourth Amendment to the U.S. Constitution is one of our nation's foundational protections, intentionally created by the Framers in response to "unrestrained search[es]" and seizures by the British. *Riley v. California*, 573 U.S. 373, 403 (2014); *see also Payton v. New York*, 445 U.S. 573, 583 (1980). As the Supreme Court has explained, "[o]pposition to such searches was in fact one of the driving forces behind the Revolution itself." *Riley*, 573 U.S. at 403.

2.      A person's home is particularly sacrosanct under our Constitution. "[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Fourth Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

1

3.      Accordingly, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586.

4.      The Fourth Amendment and its protections apply to all "people" in the United States, regardless of citizenship status or national origin.  U.S. Const. amend. IV.

5.      Despite these longstanding and crucial constitutional protections, Defendant Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement (ICE), issued a memorandum in May 2025 authorizing ICE officers to enter homes to make immigration arrests— even using force to do so—without a judicial warrant.  *See* Ex. A (Lyons Memo).

6.      But Defendants may not unilaterally change core constitutional principles and well-established jurisprudence governing judicial warrants.  As the Chief Judge of the U.S. District Court for the District of Minnesota recently stated, "ICE is not a law unto itself."  Order, *Juan T.R. v. Noem, et al.*, No. 26-CV-0107 (D. Minn. Jan. 28, 2026), Dkt. No. 10 at 3.

7.      In issuing the Lyons Memo, Defendants have established an official policy that is unlawful and unconstitutional, that abrogates longstanding agency practices and regulations, and that bypasses the required rulemaking process—all without explanation or legal basis.

8.      Plaintiffs Greater Boston Latino Network (GBLN) and Brazilian Worker Center (BWC) are two non-profit organizations that serve the immigrant communities targeted by Defendants' unprecedented immigration enforcement campaign, including by educating their constituencies about the rights that protect them in their homes.  Plaintiffs have been forced to divert scarce resources away from their core activities to respond to the Lyons Memo, including by counseling and advising members concerning the unprecedented warrantless home invasions authorized by the Lyons Memo, conducting revised know-your-rights trainings to account for this new threat, and responding to community fears of home invasions by ICE.

9.      Plaintiffs bring this action seeking a declaratory judgment and injunctive relief from the Court to hold unlawful, vacate, and set aside the Lyons Memo pursuant to the Administrative Procedure Act (APA), and to enjoin Defendants and their officers from implementing or effectuating it.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over the claims stated herein under 28 U.S.C. § 1331, conferring jurisdiction over federal questions, and 28 U.S.C. § 1346, conferring original jurisdiction over suits against the United States.

11.      This Court has remedial authority pursuant to 5 U.S.C. §§ 702, 705 and 706, the Administrative Procedure Act; 28 U.S.C. § 1651, the All Writs Act; 28 U.S.C. §§ 2201–02, the Declaratory Judgment Act; Federal Rule of Civil Procedure 65, allowing for injunctive relief, and the inherent equitable powers of this Court.

12.      Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants are officers or employees of the United States, Plaintiffs are based in this District, and the District is a site of the injuries at issue.

## PARTIES

### Plaintiffs

13.      Plaintiff Greater Boston Latino Network (GBLN) is a coalition of seven member organizations whose goal is to increase the visibility, impact, and voice of the Latinx community. GBLN and its members maintain their principal place of business in Boston, Massachusetts.

14.      As part of its mission, GBLN and its member organizations serve Latinx, immigrant, and low-income communities through a wide range of free programs and services,

including trainings and information on responding to threats of ICE enforcement, reaching over 50,000 people annually in partnership with places of worship, schools, and housing projects.

15.    Also to further its mission, GBLN and its member organizations operate core activities in education equity, such as promoting culturally competent curricula and preparing youth to pursue postsecondary education; civic engagement, including running bilingual community health clinics; and advancing Latinx leadership in decision-making positions at the local and state level.

16.    Plaintiff Brazilian Worker Center (BWC) is a non-profit corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business in Allston, Massachusetts.

17.    The BWC is a membership-based organization with a mission to empower immigrants and promote economic and social justice.  It represents a community largely comprised of Latinx immigrants, with a focus on the Brazilian population and Portuguese speakers.  The organization also provides support to asylum seekers and individuals with humanitarian relief under Temporary Protected Status (TPS).

18.    As part of its mission, the BWC provides training, education, and support regarding immigration enforcement.  Many immigrants reach out to the BWC for guidance on safely handling ICE interactions.  Additionally, as a state-designated Family Welcome Center, the BWC connects newly arrived immigrants with essential resources such as emergency housing, food and essential items, and transportation to ensure a safe and secure transition to the United States.

19.    The BWC also advances its mission by, among other core activities, providing trainings and workshops on workplace rights; assisting with rental and health insurance

applications; offering health and wellness workshops and peer support; and teaching classes on English as a Second Language (ESL), computer literacy, and occupational safety and health.

### Defendants

20. Defendant Kristi Noem is the Secretary of the U.S. Department of Homeland Security (DHS) and is sued in her official capacity. As Secretary of DHS, she oversees component agencies, including ICE.

21. Defendant U.S. Department of Homeland Security is the federal agency responsible for administering and enforcing the nation's immigration laws pursuant to 8 U.S.C. § 1103(a).

22. Defendant Todd M. Lyons is the Acting Director of ICE and is sued in his official capacity. As Acting Director of ICE, he is responsible for overseeing its functions, including setting priorities for the agency's enforcement work; establishing agency-wide operational policies, including guidance and instructions for ICE stops, arrests, and warrant execution; and managing the civil immigration detention system.

23. Defendant U.S. Immigration and Customs Enforcement is an agency of the United States and a division of DHS. Among its responsibilities, ICE enforces civil immigration law by conducting stops and arrests, executing immigration warrants and orders of removal, maintaining custody over individuals in immigration detention, and overseeing the operation of the civil immigration detention system.

### FACTUAL ALLEGATIONS

### Warrant Requirements

24. Under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586.

25.     To satisfy constitutional requirements, a valid judicial warrant authorizing entry into a home or other private space must be issued by a "neutral and detached magistrate," *Johnson v. United States*, 333 U.S. 10, 14 (1948)—an independent judicial officer who is not aligned with, employed by, or financially connected to the law enforcement agency seeking the warrant. That judicial officer makes an independent determination of probable cause.

26.     A judicial warrant is distinct from what is often called an immigration or administrative warrant, referring to Form I-205. Form I-205s are created and executed entirely within DHS. They are drafted, signed, and issued by DHS immigration officers. *See* 8 C.F.R. § 241.2(a)(1) (2016). These administrative warrants are not reviewed, approved, or issued by any judicial officer, nor do they involve any neutral judicial assessment.

27.     Form I-205s are titled "Warrant of Removal/Deportation." A sample Form I-205, publicly hosted on ICE's website, is attached to this Complaint as Exhibit B.

28.     Form I-205s state that the signing officer acts "by virtue of the power and authority vested in the Secretary of Homeland Security." *See* Ex. B. Once signed by a DHS immigration officer, Form I-205s are then carried out by other DHS officers. All ICE agents and officers are authorized to carry out these administrative warrants. *See* 8 C.F.R. § 241.2(b) (2016); 8 C.F.R. § 287.5(e)(3) (2025); *see also* Ex. B (addressed to "any immigration officer of the United States Department of Homeland Security").

29.     Form I-205s allow immigration officers to "take into custody and remove from the United States" individuals who are subject to a final order of removal or deportation—orders that are typically issued by an immigration judge, employed by the U.S. Department of Justice, or the Board of Immigration Appeals. *See* Ex. B.

30.    Form I-205s are not judicial warrants and therefore do not authorize entry into a private residence without the resident's consent.

## Immigration and Nationality Act and DHS Regulations

31.    Through the Immigration and Nationality Act (INA), Congress has charged DHS with administering and enforcing immigration laws and establishing regulations to carry out the INA's authority.  8 U.S.C. § 1103(a).

32.    Consistent with the Fourth Amendment, DHS regulations prohibit ICE from "enter[ing] into the non-public areas of . . . a residence including the curtilage of such residence . . . for the purpose of questioning the occupants or employees concerning their right to be or remain in the United States unless the officer has either a warrant or the consent of the owner or other person in control of the site to be inspected."  8 C.F.R. § 287.8(f)(2) (2025).

33.    The term "warrant" as used in the INA and these regulations means a judicial warrant in compliance with the Fourth Amendment.  *See Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 984 (C.D. Cal. 2024); Enhancing the Enforcement Authority of Immigration Officers, 59 Fed. Reg. 42406, 42412 (Aug. 17, 1994) ("the rule incorporate[d] judicial precedent based on the Fourth Amendment to the Constitution concerning the issuance of warrants [and] the obtaining of consent to enter a premises . . .").

## ICE Operations in 2025–26

34.    On the first day of his second term as President, Donald J. Trump issued Executive Order 14159, setting forth his Administration's immigration policy.  *See* Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 29, 2025).  The Executive Order describes immigrants as constituting an "[i]nvasion" that poses "threats to national security and public safety," and as engaged in "hostile activities, including espionage, economic espionage, and preparations for terror-related activities."

*Id.* It directs federal officials to combat this "invasion" by "achiev[ing] the total and efficient enforcement" of federal immigration laws. *Id.*

35.     The Executive Order ordered the Secretary of DHS to enable the Director of ICE, among other officials, to "set priorities for their agencies that protect the public safety and national security interests of the American people, including by ensuring the successful enforcement of final orders of removal." *Id.* at 8444.

36.     Since January 20, 2025, the nation has witnessed an unprecedented escalation of federal immigration enforcement, characterized by increasingly aggressive tactics that numerous federal judges have found disregard the rule of law and constitutional rights. *See, e.g.*, *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-CV-3417, 2025 WL 3465518, at *26 (D.D.C. Dec. 2, 2025) (unconstitutional warrantless arrests); *Aparicio v. Noem*, No. 25-CV-01919, 2025 WL 2998098, at *2 (D. Nev. Oct. 23, 2025) (unconstitutional detention); *Osny Sorto-Vasquez Kidd v. Mayorkas*, No. 20-CV-03512, 2021 WL 1612087, at *7 (C.D. Cal. Apr. 26, 2021), *adhered to sub nom. Kidd v. Mayorkas*, 645 F. Supp. 3d 961 (C.D. Cal. 2022) (misrepresentation as different law enforcement agents).

37.     These ICE operations have been conducted nationwide, punctuated by "surges" in various metro areas such as Los Angeles, California in June 2025, Chicago, Illinois in September 2025, and Portland, Maine in January 2026.

38.     ICE has also heavily targeted Massachusetts, engaging in two month-long enforcement surges—"Operation Patriot" in May 2025 and "Operation Patriot 2.0" in September 2025—resulting in the arrests of thousands of individuals.[1]  ICE officers in Massachusetts have

---

[1] *See* Sarah Betancourt, *Immigration Arrests Increase in Massachusetts with a New ICE Operation,* GBH (Sep. 8, 2025), https://www.wgbh.org/news/local/2025-09-08/immigration-arrests-increase-in-massachusetts-with-new-ice-operation; *see also* Simón Rios, *ICE*

consistently used tactics that involve violence and excessive force, including smashing car windows.[2]

39.    In December 2025, ICE began targeting Minneapolis and Saint Paul, Minnesota in an enforcement effort deemed "Operation Metro Surge." This ongoing effort, which has since expanded throughout Minnesota, involves a massive influx of ICE officers employing dangerous and illegal tactics on immigration targets and protestors alike. In January 2026, ICE officers killed two unarmed U.S. citizens in Minneapolis: Renée Good and Alex Pretti. As the Chief Judge of the U.S. District Court for the District of Minnesota recently explained, ICE's conduct in Minnesota has been characterized by lawlessness: ICE has violated nearly 100 court orders there in less than a month, demonstrating a flagrant contempt for the rule of law. *See* Order, *Juan T.R.*, Dkt. No. 10 at 2.

## Lyons Memorandum

40.    As ICE enforcement was ramping up across the country, Defendant Lyons issued a memo on May 12, 2025, regarding the use of Form I-205s to forcibly enter people's homes without their consent.

---

*Enforcement in Mass. Nets 1,400 Arrests in September. Less than Half had 'Significant' Criminal Background*, WBUR (Oct. 16, 2025), https://www.wbur.org/news/2025/10/16/massachuessts-ice-arrests-september.

[2] *See* Compl. and Claims for Damages under the Fed. Tort Claims Act for Jose Pineda (Dep't of Homeland Sec. Aug. 6, 2025), https://lawyersforcivilrights.org/wp-content/uploads/2025/08/Matter-of-Pineda-FTCA-Amin-Letter-8.6.25.pdf; Compl. and Claims for Damages under the Fed. Tort Claims Act for Kenia Guerrero, Daniel Flores-Martinez, and their minor children, E.F., T.F., and R.F. (Dep't of Homeland Sec. June 5, 2025), https://lawyersforcivilrights.org/wp-content/uploads/2025/08/Matter-of-Pineda-FTCA-Amin-Letter-8.6.25.pdf; *see also* Nicole Foy, *"We'll Smash the Fucking Window Out and Drag Him Out,"* ProPublica (July 31, 2025), https://projects.propublica.org/trump-ice-smashed-windows-deportation-arrests/.

41.     The Lyons Memo, dated May 12, 2025, and signed by Defendant Lyons, states that it implements Executive Order 14159.  Ex. A at 1.  The subject of the Memo is "Utilizing Form I-205, Warrant of Removal."  *Id.*

42.     The Lyons Memo purports to authorize ICE agents to enter homes, including by force, without a judicial order, consent, or exigent circumstance.  *Id.* at 2.

43.     Specifically, the Lyons Memo permits ICE agents to rely on only Form I-205, issued when a resident is subject to a final order of removal or deportation, to enter a resident's home.  *Id.*

44.     In its second paragraph, the Lyons Memo acknowledges that this is a sharp departure from prior practice.  The Memo states that "[a]lthough [DHS] has not historically relied on administrative warrants alone to arrest aliens subject to final orders of removal in their place of residence, the DHS Office of the General Counsel has recently determined that the U.S. Constitution, the Immigration and Nationality Act, and the immigration regulations do not prohibit relying on administrative warrants for this purpose."  *Id.* at 1.  It says nothing further about this recent "determination," but continues that "[a]ccordingly, in light of this legal determination, ICE immigration officers may arrest and detain aliens subject to a final order of removal . . . in their place of residence."  *Id.* at 1–2.

45.     The Lyons Memo states that "ICE immigration officers should consider all available enforcement mechanisms, including the use of a Form I-205 to arrest an alien in their place of residence, to achieve the requirements of E.O. 14159 in accordance with applicable law and policies."  *Id.* at 2.

46.     Significantly, the Lyons Memo fails to provide any explanation for the reasoning underlying this purported legal determination, which is a substantial shift in the policy governing immigration and administrative warrants that undermines constitutional protections.

47.     There has been no change in the law—not by court opinion, court order, federal statute, or otherwise—to precipitate DHS's legal determination and the Lyons Memo.

48.     The policy set forth in the Lyons Memo represents a significant shift from other DHS materials, including DHS regulations, which make clear that Form I-205s cannot authorize entry into a private residence or other private space.

49.     The Lyons Memo also provides "General Guidelines" for implementation.  This includes authorizing agents to use force to enter the home should the resident refuse to allow entry. *Id.*

50.     In a footnote, the Lyons Memo acknowledges the decision of *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 984 (C.D. Cal. 2024).  Ex. A at 2 n.3.  In that case, the court held that "an [ICE] administrative warrant is insufficient to enter the constitutionally protected areas of a home . . . ." *Kidd*, 734 F. Supp. 3d at 980.  Nonetheless, the Memo takes the position that this protection only exists in the federal judicial district where the *Kidd* case originated.  The Memo states that "[u]nless and until [the *Kidd*] decision is vacated, [] officers may not enter into the curtilage for either a knock and talk or an immigration arrest absent a judicial warrant within the Central District of California."  Ex. A at 2 n.3.  The Memo makes clear that it applies in all other jurisdictions, notwithstanding the fact that the same constitutional principles apply nationwide.

51.     Although the Lyons Memo marks a sharp departure from well-settled Fourth Amendment law, longstanding agency practice, and DHS regulations, Defendants issued the Lyons Memo without any notice-and-comment, without seeking to repeal or change the applicable

regulations, and indeed without any public disclosure. The existence of the Lyons Memo only came to light when whistleblowers filed a complaint about it in January 2026, attached as Exhibit C.

52. The whistleblower complaint describes that there was internal agency disagreement about the policy set forth in the Lyons Memo, and that the Memo has been shared internally only under strict access control, indicating the agency's cognizance of the Memo's illegality and unconstitutionality. *See* Ex. C at 7.

53. The policy is now in effect and being carried out across the country. Since the Memo's existence has been disclosed, high-ranking DHS officials and Vice President JD Vance have acknowledged its existence and spoken in support of it.[3]

### Implementation of Official Policy in the Lyons Memorandum

54. The Lyons Memo sets forth an official agency policy. The Memo was issued and signed by Defendant Lyons, on official ICE letter letterhead, in written memorandum format, and addressed to "All ICE Personnel." *See* Ex A at 1.

55. Newly hired ICE agents are reportedly being instructed to follow the Lyons Memo's guidance. *See* Ex. C at 3. In this manner, new ICE agents are being trained and directed to rely on Form I-205 to enter certain homes without consent and without a judicial warrant. *Id.* Instructors at the Federal Law Enforcement Training Center have been directed to verbally train all new ICE agents to follow this policy. *Id.*

---

[3] *See* Rebecca Santana, *Immigration Officers Assert Sweeping Power to Enter Homes Without a Judge's Warrant, Memo Says*, AP News (Jan. 21, 2026), https://apnews.com/article/ice-arrests-warrants-minneapolis-trump-00d0ab0338e82341fd91b160758aeb2d; Amy Lu, *Fight Over Warrants: How Trump Administration Justifies Forcible Entry During Immigration Arrests*, WVTM (Jan. 22, 2026), https://www.wvtm13.com/article/whistleblower-ice-training-warrant-concerns/70098337.

56.     ICE has hired thousands of new ICE agents in the last year,[4] and this rapid expansion is ongoing.  Many of these ICE officers have been trained—and will continue to be trained—under the Lyons Memo's guidance on making warrantless arrests at homes.  Thousands of newly hired and trained ICE officers have already been deployed nationwide and will continue to be sent across the country to engage in enforcement operations and make arrests, relying on unconstitutional guidance and therefore apt to engage in illegal conduct.

**Home Arrests Pursuant to Form I-205s**

57.     Since the Lyons Memo was issued, ICE agents have followed it.  ICE has entered and made arrests inside homes with only Form I-205s and not any judicial warrants.

58.     For example, on January 11, 2026, Garrison Gibson, a Liberian native and Minneapolis, Minnesota resident, was arrested after masked, heavily armed ICE officers forcibly entered his home using a battering ram.[5]  Both Gibson and his wife asked ICE to show a warrant. ICE had only a Form I-205, signed by a DHS officer, when they made the illegal entry and arrest.

---

[4] *See* Press Release, U.S. Dep't of Homeland Sec., ICE Announces Historic 120% Manpower Increase, Thanks to Recruitment Campaign that Brought in 12,000 Officers and Agents (Jan. 3, 2026), https://www.dhs.gov/news/2026/01/03/ice-announces-historic-120-manpower-increase-thanks-recruitment-campaign-brought (claiming 12,000 new ICE agents were hired in the last four-to-five months); *but see* Workforce Changes, OPM, https://data.opm.gov/explore-data/analytics/workforce-changes (last visited Jan. 28, 2026) (select "Department of Homeland Security" as Department and Agency, then "HSBB - Immigration and Customs Enforcement" as Sub-Agency) (data from the Office of Personnel Management suggests a net workforce growth of just over 5,000 ICE officers in the last year).

[5] *See* Laura Ingle, *New Details Emerge in ICE Arrest Seen on NewsNation*, NewsNation (Jan. 15, 2026), https://www.newsnationnow.com/us-news/immigration/new-details-emerge-ice-arrest-video-newsnation/; Feven Gerezgiher & Matt Sepic, *Minneapolis Man Says ICE Agents Took 'Trophy' Photos, Locked Him in Overcrowded Cell*, MPR News (Jan. 18, 2026), https://www.mprnews.org/story/2026/01/18/garrison-gibson-says-ice-agents-took-trophy-photos-locked-in-overcrowded-cell; Eric Chaloux, *Minneapolis Family Raises Questions About the Warrant Given to them by Federal Agents*, KSTP News (Jan. 12, 2026), https://kstp.com/kstp-news/top-news/minneapolis-family-raises-questions-about-the-warrant-given-to-them-by-federal-agents/.

A federal judge later held that ICE agent's arrest of Gibson violated the Fourth Amendment. *See* Am. Order, *Garrison G. v. Bondi*, No. 26-CV-172 (D. Minn. Jan. 17, 2026), Dkt. No. 10.



Screenshot from NewsNation live television footage.[6]

---

[6] Ingle, *supra*.



Gibson's wife in shock and terror after a federal immigration enforcement officer used a battering ram to break down the door of their home. Photo credit: John Locher, AP Photo.[7]

---

[7] Santana, *supra*.



Screenshot from Facebook video recorded by Gibson's wife.[8]

59.    Similarly, on January 18, 2026, ChongLy Scott Thao, an Asian-American grandfather, U.S. citizen, and resident of St. Paul, Minnesota, was arrested after ICE officers forcibly entered his home without a judicial warrant.[9] Masked agents, many of whom carried rifles and riot shields, knocked on his door several times. They then used a battering ram to break down the door. Once inside Thao's home, approximately ten agents pointed guns at Thao and his family,

---

[8] Chaloux, *supra*.

[9] Jack Brook, *A U.S. Citizen Says ICE Forced Open the Door to his Minnesota Home and Removed him in his Underwear After a Warrantless Search*, PBS News (Jan. 20, 2026), https://www.pbs.org/newshour/nation/a-u-s-citizen-says-ice-forced-open-the-door-to-his-minnesota-home-and-removed-him-in-his-underwear-after-a-warrantless-search; Maia Coleman, *ICE Arrest of a Citizen, Barely Dressed, Sows Fear in Twin Cities*, N.Y. Times (Jan. 20, 2026), https://www.nytimes.com/2026/01/20/us/chongly-scott-thao-ice-arrest.html.

and immediately handcuffed Thao.  They refused to review his identification.  Thao was taken from his home, wearing only underwear and draped with a blanket as snow fell.  He was detained in ICE vehicles for numerous hours.  After identifying Thao, ICE drove him home without an explanation or apology.



Federal immigration enforcement agents entering Thao's home after breaking down his door with a battering ram.  Photo credit: Leah Millis, Reuters.[10]

---

[10] Coleman, *supra*.



Thao being forcibly removed from his home in below-freezing temperatures.  Photo credit: Leah Millis, Reuters.[11]

### **Plaintiffs' Diversion of Resources in Response to Lyons Memo**

60.    In direct response to the Lyons Memo, Plaintiffs have been forced to divert resources away from their existing core activities toward previously unplanned efforts to respond to the new ICE policy.

61.    Plaintiffs are devoting significant time that would otherwise be spent on their mission and regular programming to now monitor updates related to the Lyons Memo and confirmed reports of ICE conducting warrantless home arrests.

62.    Plaintiffs help immigrants understand their constitutional and civil rights, including well-established warrant requirements.

---

[11] *Id.*

63.     Plaintiff GBLN and its partners host know-your-rights presentations, workshops, and community events to educate their members and the public, including on how to safely navigate encounters with ICE and how to review a warrant.  These trainings include guidance on the hallmarks of a valid judicial warrant, including that it is issued by a federal or state court and signed by a judge.  As another example, at a recent GBLN event in Hyde Square, youth participants learned about the role of consent in interactions with law enforcement.

64.     Plaintiff GBLN's members and partners also rely on and distribute protocol outlining procedures to follow in the event of an ICE raid.  These protocols include asking for a warrant and ensuring that it is signed and dated by a judge, and explaining that administrative warrants, such as Form I-205s, do not allow officers to enter private areas.

65.     For its part, Plaintiff BWC conducts extensive one-on-one training with immigrants and other concerned community members regarding how to ask law enforcement for a warrant if officers come to their home, and how to review a warrant.  The BWC distributes and trains individuals, especially immigrants, on "red cards," which are wallet-sized cards that inform them of their constitutional rights.  These rights include Fourth Amendment rights protecting the home from entry without a judicial warrant.  The organization also offers know-your-rights trainings, during which it informs individuals that law enforcement needs a judicial warrant to enter their home.  Among other guidance, the BWC website[12] includes publicly available know-your-rights pamphlets, formulated before the Lyons Memo came to light, stating:

- "Do not open the door unless ICE presents a warrant signed by a judge," and

- "Right to see a warrant: Always ask to see a warrant signed by a judge."

---

[12] *Know Your Rights*, Brazilian Worker Ctr., Inc., https://braziliancenter.org/know-your-rights/ (last visited Jan. 29, 2026).

66.    Plaintiff BWC has ramped up its know-your-rights education as ICE has increased immigration enforcement in Massachusetts.  BWC is located approximately one block away from the car wash in Allston-Brighton that was raided by ICE on November 4, 2025.[13]  Frightened community members sought support from the BWC and information about ICE encounters and arrests, including warrant requirements.  Particularly since the car wash raid, BWC staff have directed resources to help community members understand warrant requirements.

67.    Due to the Lyons Memo, Plaintiffs GBLN and BWC are now forced to expend resources, staffing, and time to formulate new public education materials—including know-your-rights information, presentations, workshops, and trainings—that take into account the Lyons Memo and its policy authorizing warrantless home arrests.

68.    Plaintiffs have reallocated resources to re-train and strategize with staff based on the Lyons Memo and reports of ICE conducting warrantless home arrests.  For example, shortly after the Lyons Memo leaked, Plaintiff BWC conducted a three-hour training for its staff to begin developing a new strategy on what advice they should be providing to members about how to safely interact with Defendants and their immigration enforcement officers.

69.    Both Plaintiffs are in the process of and preparing to re-train their staff and members, re-disseminate materials, and re-advise members about their rights, which are currently unclear given the new policy's contravention of Fourth Amendment principles, diverting time and resources away from their core activities.

70.    Plaintiffs have also had to devote resources, staffing, and time to counseling many community members in light of the Lyons Memo's policy change and rejection of well-settled

---

[13] *See* Camilo Fonseca, *Immigration Agents Raid Allston Car Wash and Detain Several Workers*, Bos. Globe (Nov. 4, 2025), https://www.bostonglobe.com/2025/11/04/metro/immigration-raid-allston-car-wash/.

Fourth Amendment jurisprudence.  ICE is conducting enforcement activities in Massachusetts and has been doing so throughout the last year, punctuated by surges of activity that occur without warning.  With this enforcement ongoing, Plaintiffs have adjusted their programmatic activities and planning to account for the need to counsel additional community members about warrantless home invasions in the coming weeks and months, as immigrants turn to them whenever there are changes in ICE tactics and policies.  For example, Plaintiff BWC received a high volume of unexpected requests for assistance and support immediately following the ICE raid at the nearby car wash.

71.    The issue of ICE's ability to conduct warrantless home invasions is of particular importance to Plaintiffs' members and others in the community that Plaintiffs serve.  That is because many of these individuals are in immigration proceedings—with pending asylum applications, TPS status, or otherwise seeking to adjust their immigration status—that have required them to disclose their personal information, including home addresses, to the federal government.  As a result, ICE knows exactly where they live.  These individuals now live in debilitating fear that they will be the targets of warrantless arrests in their homes.  Plaintiffs have been forced to engage in additional outreach and affirmative education to these members.  Plaintiffs and their members are also putting in place emergency plans for these families in the event of a warrantless arrest.

72.    Due to the Lyons Memo, Plaintiffs are also experiencing a shrinkage of public participation in their programs and activities.  For example, Plaintiff GBLN has experienced a significant drop in engagement across many of their most popular community programming and in-person events.  This has hindered Plaintiff GBLN's ability to provide core services, and has also

impaired its ability to access and interact with the community members it serves, which is fundamental to its ability to carry out its mission.

73.    Plaintiffs are concerned about how the Lyons Memo has been used to forcibly enter businesses, workplaces, and other private areas without a judicial warrant.  In Minneapolis, ICE officers attempted to raid a foreign consular building—which is off-limits to law enforcement—without authorization from consular officials.[14]   This has destabilized the day-to-day operations of mission-based organizations, including Plaintiffs and their affiliates, who are now afraid that their bases of operation will be subject to unlawful surveillance and forced entry.

74.    The Lyons Memo has thwarted Plaintiffs' missions and core activities.  But for the Lyons Memo, the enforcement practices that it purports to authorize, and the illegal conduct it has spawned, Plaintiffs would not be expending their resources or diverting time, staff capacity, and mission-critical efforts in this manner.

75.    Plaintiffs have been forced to divert resources away from their core mission and initiatives—spanning economic justice, housing support, education equity, youth engagement and community empowerment, and more as well as activities regarding traditional immigration enforcement—which has impaired their ability to provide regular programming and resources to their members in the community.  Because of this diversion of resources, Plaintiffs' core activities have and will continue to be undermined, and their capacity to serve members and others in the community now limited.  Plaintiffs' resources are being reallocated in real time and will continue to shift as unlawful ICE enforcement escalates.

---

[14] *See* Max Bearak & Ali Watkins, *Ecuador Objects After ICE Agent Tries to Enter Minneapolis Consulate*, N.Y. Times (Jan. 28, 2026), https://www.nytimes.com/2026/01/28/us/ice-ecuador-consulate-minneapolis.html.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of Administrative Procedure Act – Contrary to Constitutional Right

76.     Plaintiffs re-allege and incorporate each and every allegation made in the preceding paragraphs as if fully set forth herein.

77.     The Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*, ensures that federal agencies are accountable to the public by providing a "right of review" to any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  Judicial review extends to "final agency action for which there is no other adequate remedy in court."  5 U.S.C. § 704.

78.     The Lyons Memo is a final agency action.  An agency action is considered "final" if it "mark[s] the 'consummation' of the agency's decisionmaking process," meaning "not [] of a merely tentative or interlocutory nature," and it is an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

79.     The APA empowers the federal courts to "hold unlawful and set aside agency action[s]" that are "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

80.     The guidance set forth in the Lyons Memo violates the Fourth Amendment of the U.S. Constitution.

81.     The Fourth Amendment's core purpose is to protect the privacy and sanctity of the home from "unreasonable governmental intrusion."  *Silverman*, 365 U.S. at 511.  In providing the right of people to "be secure in their persons, houses, papers, and effects, against unreasonable

23

searches and seizures," U.S. Const. amend. IV, a key principle of Fourth Amendment precedent is that "searches and seizures inside a home without a warrant are presumptively unreasonable," *Payton*, 445 U.S. at 586.

82.     The Lyons Memo purports to authorize ICE officers to enter homes without a judicial warrant and therefore violates this fundamental constitutional right.  *See, e.g.*, *Kidd*, 734 F. Supp. 3d at 980 (holding that an ICE-issued administrative warrant was "insufficient to enter the constitutionally protected areas of a home . . . ").

83.     As a result of Defendants' unlawful actions, Plaintiffs face irreparable harm.

## COUNT II

### Violation of Administrative Procedure Act – Not In Accordance with the Law

84.     Plaintiffs re-allege and incorporate each and every allegation made in the preceding paragraphs as if fully set forth herein.

85.     The APA also empowers the federal courts to "hold unlawful and set aside agency actions" that are "not in accordance with law."  5 U.S.C. § 706(2)(A).  Administrative law prescribes that agencies are required to follow their own regulations.  *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

86.     The guidance set forth in the Lyons Memo violates DHS regulations.

87.     The Lyons Memo purports to authorize immigration officers to enter homes without a judicial warrant, in violation of agency regulations, *see* 8 C.F.R. §§ 287.8(c)(2)(ii), (f)(2), and the APA, *see* 5 U.S.C. § 706(2)(A); *Accardi*, 347 U.S. at 268.

88.     As a result of Defendants' unlawful actions, Plaintiff faces irreparable harm.

## COUNT III

### Violation of Administrative Procedure Act – Arbitrary and Capricious

89.     Plaintiffs re-allege and incorporate each and every allegation made in the preceding paragraphs as if fully set forth herein.

90.     The APA empowers federal courts to "hold unlawful and set aside agency actions" that are "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). An agency action is arbitrary or capricious "if it is not reasonable and reasonably explained." *Ohio v. Env'tl Prot. Agency*, 603 U.S. 279, 292 (2024) (citation omitted).

91.     This flows from the "basic procedural requirement[] of administrative rulemaking [] that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

92.     An agency may change course on or reverse an existing policy so long as it provides a reasoned explanation for that change. *Id.* It "must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Id.* (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). The agency "must also be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account,'" and must therefore provide a reasoned explanation "'for disregarding . . . circumstances that . . . were engendered by the prior policy.'" *Id.* at 221–22 (quoting *FCC*, 556 U.S. at 515–16). "An 'unexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'" *Id.* at 222 (quoting *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)).

93.     Defendants' actions are arbitrary and capricious. Defendant Lyons acknowledged a change in position, stating in the Memo that DHS "has not historically relied on" the enforcement practice that the Memo then purports to authorize. Ex. A at 1. However, Defendants do not address any reliance interests engendered by centuries-old warrant practices pursuant to the Fourth

Amendment, nor do they provide any explanation or reasoning for the significant policy change outlined in the Lyons Memo.

94.    The Lyons Memo references a "legal determination" made by the DHS Office of the General Counsel that the law does "not prohibit relying on administrative warrants for" arresting individuals subject to final orders of removal in their homes.  However, Defendants fail to offer any information about that legal determination, nor any justification for this sudden departure from longstanding constitutional principles and agency policy and practice.

95.    As a result of Defendants' unlawful actions, Plaintiffs face irreparable harm.

## COUNT IV

### Violation of Administrative Procedure Act – Notice-and-Comment Rulemaking Process

96.    Plaintiffs re-allege and incorporate each and every allegation made in the preceding paragraphs as if fully set forth herein.

97.    The APA requires agencies to follow a three-step notice-and-comment process when formulating, amending, or repealing an administrative rule.  5 U.S.C. §§ 553, 551(5). "Failure to abide by these requirements renders a rule procedurally invalid."  *N.H. Hosp. Assoc. v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018).

98.    Only interpretive rules; general statements of policy; or rules of agency organization, procedure, or practice are exempted from this three-step process.  5 U.S.C. § 553(b)(A).

99.    "Agencies have never been able to avoid notice and comment simply by mislabeling their substantive pronouncements."  *Azar v. Allina Health Servs.*, 587 U.S. 566, 575 (2019).  "On the contrary, courts have long looked to the *contents* of the agency's action, not the

agency's self-serving *label*, when deciding whether statutory notice and comment demands apply." *Id.* (emphasis in original).

100.    An agency policy is considered a substantive rule if it "adopt[s] a new position inconsistent with any of the [agency's] existing regulations," *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 88 (1995), or is "inconsistent with another rule having the force of law," *Mass. v. Nat'l Inst. of Health*, 770 F. Supp. 3d 277, 315 (D. Mass. 2025) (citing *N.H. Hosp. Assoc.*, 887 F.3d at 73). Additionally, a policy is a substantive rule if it "creates rights, assigns duties, or imposes obligations, the basic tenor of which is not already outlined in the law itself." *N.H. Hosp. Assoc.*, 887 F.3d at 70 (citation omitted).

101.    Despite not being labeled as such, the policy set forth in the Lyons Memo is a substantive rule subject to the APA's notice-and-comment process.

102.    The Lyons Memo establishes a policy that is inconsistent with DHS regulations, rules, operating procedures, and other preexisting policies.

103.    Because DHS and ICE did not go through the requisite notice-and-comment period, the Lyons Memo violates the procedural requirements of the APA. *See* 5 U.S.C. §§ 553, 551(5).

104.    As a result of Defendants' unlawful actions, Plaintiffs face irreparable harm.

## COUNT V

## Declaratory Judgment, 28 U.S.C. §§ 2201, 2202

105.    Plaintiffs re-allege and incorporate each and every allegation made in the preceding paragraphs as if fully set forth herein.

106.    For the reasons stated above, Defendants have committed numerous violations of the APA.

107.    Plaintiffs seek a declaration to that effect.

108.    Defendants' illegal actions have injured and will continue to injure Plaintiffs in numerous ways.

## PRAYER FOR RELIEF

Wherefore the Plaintiffs respectfully request that the Court grant the following relief:

A.  Issue a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the Lyons Memo violates the Administrative Procedure Act and is therefore void and without legal force or effect;

B.  Hold unlawful, vacate, and set aside the Lyons Memo pursuant to 5 U.S.C. §§ 553, 551(5), 705, and 706;

C.  Issue a preliminary and permanent injunction enjoining Defendants, their agents, servants, employees, attorneys and all persons in active concert with them from implementing or effectuating the Lyons Memo;

D.  Issue an order awarding Plaintiffs reasonable attorneys' fees, costs, and expenses; and

E.  Such other and additional relief as the Court deems equitable, just, and proper.

Dated: January 30, 2026

By their attorneys,

*/s/ Brooke Simone*
Brooke Simone (BBO #718168)
Jillian Lenson (BBO #690653)
Oren Sellstrom (BBO #569045)
Iván Espinoza-Madrigal (BBO #708080)

Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, Massachusetts 02210
(617) 482-1145
bsimone@lawyersforcivilrights.org
jlenson@lawyersforcivilrights.org
osellstrom@lawyersforcivilrights.org
iespinoza@lawyersforcivilrights.org