# EXHIBIT C

**WHISTLEBLOWER**
**AID**

*Report government and corporate lawbreaking.*
*Without breaking the law.*

—ANONYMOUS WHISTLEBLOWER DISCLOSURE—

**January 7, 2026**

**Via email**

**REDACTED FOR CONGRESS**

██████████████████████
██████████████████████████
██████████████████████████████
███████████████████
████████████████

**Re: Secretive DHS memo authorizes ICE to illegally enter homes without a judicial warrant in violation of the Fourth Amendment**

███████████████

1.      Whistleblower Aid represents two anonymous United States Government Officials disclosing a secretive – and seemingly unconstitutional – policy directive. This policy directive authorizes Immigration and Customs Enforcement ("ICE") Agents to enter homes and residences without consent, in order to conduct arrests and removals without a warrant issued by a federal judge.[1]

2.      Given that we are keeping the whistleblowers' identities anonymous even from oversight investigators, our objective is to provide as much information as possible for investigators to locate and gather evidence in order to initiate a formal investigation, while balancing our client's concerns and need for anonymity. Accordingly, if there are any questions following your review of this disclosure, please contact the undersigned so that the requested information can be timely provided, to the extent possible.

---

[1] Exhibit 1, Memorandum from Acting ICE Director Todd Lyons on Utilizing Form I-205, Warrant of Removal (May 12, 2025).

**Whistleblower Aid is a U.S. tax-exempt, 501(c)(3) organization, EIN 26-4716045.**
**https://WhistleblowerAid.org**
Contact via **SecureDrop** over Tor: http://whistebloweraid.securedrop.tor.onion - via **Signal App**: +1 201-773-1371

**WHISTLEBLOWER** AID

*Report government and corporate lawbreaking.*
*Without breaking the law.*

3.      Although the undersigned have prepared this disclosure, our clients have reviewed its contents and the positions espoused herein should be considered as their own. Thus, where a factual statement is asserted and does not include a citation to a supporting document, the source is one of our anonymous clients.

**The Gravamen of the Disclosure**

4.      The gravamen of the disclosure is as follows:

a.      By memorandum dated May 12, 2025 ("the May 12 Memo"), Acting ICE Director Todd Lyons authorizes ICE agents to **forcibly enter into certain people's homes without a judicial warrant**, consent, or an emergency**.**

b.      Specifically, in the May 12 Memo, the Acting ICE Director authorized ICE Agents to rely on Form I-205 (which is not a judicial warrant) to enter the residence of an alien subject to a final order of deportation, without consent, including by "a necessary and reasonable amount of force."[2]

c.      While addressed to "All ICE Personnel," in practice the May 12 Memo has *not* been formally distributed to all personnel. Instead, the May 12 Memo has been provided to select DHS officials who are then directed to verbally brief the new policy for action. Those supervisors then show the Memo to some employees, like our clients, and direct them to read the Memo and return it to the supervisor.

d.      A Form I-205, which DHS has called an "Warrant of Removal/Deportation" is drafted and signed by an ICE official. Based upon the final administrative order of deportation typically issued by an immigration judge,[3] the purpose of the Form I-205 is to authorize ICE Agents to detain and remove these individuals. These arrests have always been limited to public places because the Form I-205 has not been considered a warrant issued by a "neutral and detached magistrate." *Only a* warrant issued by a "neutral and detached magistrate" (e.g., a *judicial*

---

[2] Exhibit 1, Memorandum from Acting ICE Director Todd Lyons on Utilizing Form I-205, Warrant of Removal (May 12, 2025).
[3] 8 C.F.R § 1241.32; 8 C.F.R § 241.2.

REDACTED FOR CONGRESS

**WHISTLEBLOWER**
**AID**

*Report government and corporate lawbreaking.*
*Without breaking the law.*

REDACTED FOR CONGRESS

*warrant*) would authorize ICE Agents to enter or search nonpublic areas such as an alien's residence.

    e.       It appears that the Acting ICE Director has authorized the very conduct that DHS in 2025 legal training materials (citing Supreme Court precedent) has called "the chief evil against which the wording of the Fourth Amendment is directed" -- "physical entry of the home" without consent or a proper warrant.[4]

    f.       Based upon information and belief, newly hired ICE Agents – many of whom do not have a law enforcement background – are now being directed to rely solely on Form I-205 to enter a home without consent to conduct arrests. In fact, our client at DHS understands that instructors at the Federal Law Enforcement Training Center are directed to verbally train all new ICE Agents to follow this policy while disregarding written course material instructing the opposite. Potentially, scores of ICE Agents will be emboldened to unlawfully enter private residences, which include the private residences of U.S. citizens.

**The Form I-205 Warrant of Removal/Deportation versus a Judicial Warrant**

    5.       Earlier this year, the Congressional Research Service ("CRS") reviewed and analyzed ICE's legal authorities. Notably, CRS found that ICE warrants *do not* confer the same authority as judicial warrants[5]:

> "[t]he Supreme Court has also long held that, absent certain exceptions, the Fourth Amendment prohibits the government's nonconsensual entry into a person's home without a judicial warrant. Unlike judicial warrants,

---

[4] See note 27 infra.

[5] Note that "warrant" refers to a judicial warrant (i.e. a warrant issued by a federal district court judge or magistrate); *see e.g.* Federal Law Enforcement Training Centers, Office of Chief Counsel, Legal Training Handbook, 470 (2025), https://www.fletc.gov/sites/default/files/25_0106-LEG-LegalTrainingHandbook.pdf ("There are several ways to obtain a federal arrest warrant. A federal judge can issue an arrest warrant on a criminal complaint. The clerk of court can issue an arrest warrant following a grand jury's return of an indictment or following the U.S. Attorney's filing of an Information. Federal Rules of Criminal Procedure (Fed. R. Crim. P.) 4 and 9 govern the form and issuance of arrest warrants"); *see also id* at 321 (" An arrest warrant is a command that a court issues to authorize law enforcement officers to arrest a particular person and bring them to an initial appearance without unnecessary delay. The arrest warrant identifies not only the person to be arrested but also the crime charged").

**WHISTLEBLOWER**
**AID**

*Report government and corporate lawbreaking.*
*Without breaking the law.*

warrants issued by ICE are purely administrative, as they are neither reviewed nor issued by a judge or magistrate, and therefore do not confer the same authority as judicially approved arrest warrants."[6]

6.        Under the Fourth Amendment and decades of legal precedent, law enforcement ordinarily requires a judicial warrant to enter a residence.[7] Protecting the home from unreasonable searches and seizures – otherwise known as "warrantless searches" – is the thrust of the Fourth Amendment.[8] A judicial warrant is issued by a neutral and detached magistrate.[9] Neutral and detached magistrates must not be part of or paid by the entity seeking the warrant, such as a "government enforcement agent."[10]

7.        DHS Form I-205 is a warrant of removal/deportation that allows for the arrest (or seizure) and deportation of individuals found to have been issued a final order of removal.[11] Despite bearing the name warrant, Form I-205 is an administrative document signed by DHS officials, namely immigration officers, and so without the neutrality of a detached judge.[12]

8.        Until the May 12 Memo, the Form I-205 has historically not been used to allow for the entry into a residence, absent consent, because it is not a judicial warrant (i.e. issued by a judge), no judge reviews the I-205. The immigration officer signing the Form is *not* a "neutral and detached magistrate" within the understanding of Fourth Amendment legal precedent, as rather than an independent neutral authority, immigration officers work for the agency obtaining and executing the Form.[13] The position of the May 12th Memo would

---

[6] Hillel Smith, Cong. Rsch. Serv., LSB10362, *Immigration Arrests in the Interior of the United States: A Primer* (June. 13, 2025), https://www.congress.gov/crs-product/LSB10362.
[7] *Payton v. New York,* 445 U.S. 573, 585 (1980).
[8] *Id.* at 584.
[9] *Johnson vs. United States,* 333 U.S. 10, 14 (1948)("Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.").
[10] *Id; see also*, *Connally vs. Georgia*, 429 U. S. 245, 250 (1977).
[11] U.S. Dep't of Homeland Security Immigration and Customs Enforcement, Warrant of Removal/Deportation, https://www.ice.gov/sites/default/files/documents/Document/2017/I-205_SAMPLE.PDF.
[12] *Id.*
[13] Margot Mendelson et al., *An Examination of ICE's Fugitive Operations Program,* Migration Policy Institute (Feb.2009), https://www.migrationpolicy.org/sites/default/files/publications/NFOP_Feb09.pdf ("The warrants .. are issued by ICE staff and are civil in nature, not traditional search or arrest warrants.

REDACTED FOR CONGRESS

WHISTLEBLOWER
AID
Report government and corporate lawbreaking.
Without breaking the law.

neuter the warrant requirement of the Fourth Amendment, overturning decades of strong constitutional legal precedent.

**The May 12, 2025, Memorandum**

9.    ICE leadership issued the May 12 Memorandum to implement "Executive Order 14159, *Protecting the American People Against Invasion*."[14] That Executive Order directs the Department of Homeland Security to "ensur[e] the successful enforcement of final orders of removal."[15]

10.    The Memorandum describes the process by which ICE Agents may rely on an I-205 to conduct an arrest in an alien's place of residence. It states:

> Although **the U.S. Department of Homeland Security (DHS) has not historically relied on administrative warrants alone to arrest aliens subject to final orders of removal in their place of residence**, the DHS Office of General Counsel has recently determined that the U.S. The Constitution, the immigration and Nationality Act, and the immigration regulations do not prohibit relying on administrative warrants for this purpose. **Accordingly, in light of this legal determination, ICE immigration officers may arrest and detain aliens subject to a final order of removal** issued by an immigration judge, the Board of Immigration Appeals (BIA), or a U.S. district court judge or magistrate judge **in their place of residence**. … ICE immigration officers should consider all available enforcement mechanisms, including the use of the Form I-205 to arrest an alien in their place of residence, to achieve the requirements of E.O. 14159, in accordance with applicable law and policies." (emphasis added).[16][17]

> \*\*\*

---

In other words, a neutral and detached judge has not approved the warrant after reviewing sworn evidence or making a finding of probable cause to believe a law has been violated, as is required for criminal warrants").

[14] Exec. Order No. 14,159, 90 Fed. Reg. 8443, 8444 (Jan. 20, 2025).

[15] *Id.*

[16] Exhibit 1. Memorandum from Acting ICE Director Todd Lyons on Utilizing Form I-205, Warrant of Removal (May 12, 2025).

[17] *Id.*

REDACTED FOR CONGRESS

WHISTLEBLOWER
AID

*Report government and corporate  lawbreaking.*
*Without breaking the law.*

REDACTED FOR CONGRESS

Before entering a residence pursuant to Form I-205, ICE officers and agents must "knock and announce." In announcing, officers and agents must state their identity and purpose. Following announcement, officers and agents must allow those inside the residence a reasonable chance to act lawfully. **Should the alien refuse admittance, ICE officers and agents should use only a necessary and reasonable amount of force to enter the alien's residence,** following proper notification of the officer's or agent's authority and intent to enter. ICE officers and agents must not effectuate an arrest in a third-party residence without consent, exigency, or a judicial warrant to enter the third-party residence."

11.    While the Memorandum does carve out the Central District of California[18] from the new policy and states that agents may not rely on Form I-205 to make an arrest in a third-party residence,[19] – these exceptions do not save the May 12 Memo from its unconstitutional mandate.

12.    Upon information and belief, and consistent with the May 12 Memo, instructors for new ICE recruits are directed to teach that Form I-205 allows ICE agents to arrest aliens in their home - *without consent to enter the residence and without judicial warrant*. Our clients understand that this instruction contradicts DHS's own written materials currently used to train ICE cadets. According to Basic Immigration Enforcement Training Program materials used to train ICE cadets for Enforcement and Removal Operations ("ERO"), "...**a warrant of removal/deportation does NOT alone authorize a 4th amendment search of any kind."[20]**

---

[18] In a footnote, the memo instructs agents not to enter the curtilage for an arrest without a judicial warrant in the Central District of California due to a recent court case. *Kidd v. Mayorkas,* 734 F. Supp. 3d 967, (C.D. Cal. 2024).
[19] Exhibit 1 at 2.
[20] Exhibit 2, U.S. Dep't of Homeland Security Immigration and Customs Enforcement, ERO Training Hand book, BIETP 4th Amendment - Warrants and Warrant Exceptions Study Guide (Jul. 26, 2021), at 7.

WHISTLEBLOWER AID

*Report government and corporate lawbreaking.*
*Without breaking the law.*

**Consciousness of Guilt: An Opaque and Secret Memorandum with Threats of Reprisal**

13.     Despite the May 12 Memo being addressed to "All ICE Personnel," in practice the memorandum has only been distributed to select DHS and ICE officials. Furthermore, our clients have been told that the May 12 Memo must be treated with unusually strict access control for a document without any confidentiality markings.

14.     To wit: one of our clients was allowed to view the memorandum only in the presence of their supervisor. They were handed the Memorandum, allowed a few minutes to review it without the ability to take notes, and were directed to hand it back. They were also informed that another employee had been reassigned for contradicting a supervisor about a different ICE policy. Our client understood their supervisor shared this piece of information as a warning that expressing disagreement with the new arrest policy could result in adverse career consequences.

15.     Together, our clients are aware of multiple DHS employees who faced retaliation for expressing their concerns and/or disagreement with the May 12 Memo's policy change, likely constituting prohibited personnel practices. One client is aware of a seasoned government instructor, tasked with teaching this new doctrine, who chose to resign rather than be forced to teach what they understood to be unlawful.

16.     Based upon information and belief, ICE began formalizing this policy change as early as March 2025. The internal disagreement about the policy and the furtive manner of its roll out are indicators that agency leadership is aware that this new policy runs afoul of settled legal precedent and Constitutional principles.

17.     Furthermore, one of our clients understands that ICE agents operating in the Fifth Circuit – including Texas – have started to rely on Form I-205 to arrest aliens in their residences without a proper judicial warrant.[21] Our client understands that these targeted arrest operations were carried out in court

---

[21] Our clients can speak more to this, but will refrain from doing so here to help maintain their anonymity.

REDACTED FOR CONGRESS

districts that are sympathetic to the Administration's campaign to deport illegal immigrants should a targeted person litigate their unlawful arrest.[22]

**Instruction and Implementation of the May 12 Memo Doctrine**

18.     In the May 12 Memo, the Acting ICE Director states that DHS has "not historically relied on administrative warrants alone to arrest aliens subject to final orders of removal in their place of residence."[23] But the Acting ICE Director fails to mention that the reason DHS has never done this before is because courts have consistently held that entering a home without a warrant from a neutral and detached magistrate violates the Fourth Amendment.[24] DHS's own written training materials, including materials used in 2025, make this clear.

Here are some examples of DHS written materials and official statements conveying the *proper* interpretation of the law:

a.  ICE Fugitive Operations Handbook (2023):

> "Neither a Warrant for Arrest of Alien (I-200) **nor a Warrant of Removal (I-205) authorizes officers to enter the target's residence or anywhere else where the target has a reasonable expectation of privacy.** A government intrusion into an area where a person has a reasonable expectation of privacy for the purpose of gathering information will trigger Fourth Amendment protections, including a physical intrusion into a constitutionally protected area .... **Therefore, without a criminal warrant, officers must obtain voluntary consent before entering a residence or area where there is a reasonable expectation of privacy.**"[25]

---

[22] A decision to target specific groups for arrest without a proper judicial warrant may give rise to an action for a conspiracy against rights under 18 U.S.C. § 241.
[23] Exhibit 1 at 1.
[24] As noted in this disclosure, there has not been any new Supreme Court or other court ruling that has radically changed the scope of this constitutional protection so as to justify such a significant change in DHS policy.
[25] *See Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 975 (C.D. Cal. 2024)(referencing ICE Fugitive Operations Handbook, "in a section titled 'Consent').

REDACTED FOR CONGRESS

**WHISTLEBLOWER AID**

*Report government and corporate lawbreaking.*
*Without breaking the law.*

REDACTED FOR CONGRESS

b.  Federal Law Enforcement Training Centers, Legal Instructor ICE
Administrative Removal Warrants recorded discussion transcript:

> [T]he removal warrant used by ICE [I-205] is not a criminal warrant
> signed by a federal judge. …. a removal warrant does not authorize
> the ICE officer to enter into an REP [reasonable expectation of
> privacy] area to execute the warrant.  … **Well, what would happen**
> **if the ICE officer locates the person in an REP area, such as his**
> **or her home? … Well, in that case the administrative removal**
> **warrant authorizes the ICE officer to arrest the subject, but not**
> **to enter into an REP area such as his or her home unless**
> **consent to enter is given. If the officer does not have consent**
> **to enter, even if the officer knows the person subject to the**
> **warrant is inside the home, the officer has no legal authority to**
> **enter the home pursuant to that removal warrant.**"[26]

c.  **DHS's** <u>own</u> **Legal Training Manual**, issued in 2025 by its Office of Chief
Counsel, states that "the 'physical entry of the home is the chief evil
against which the wording of the Fourth Amendment is directed.' Welsh v.
Wisconsin, 466 U.S. 740 (1984)"[27]:

> "For that reason, entering a home to arrest a person without a
> [judicial] warrant or an exception to the warrant requirement is
> typically a violation of the Fourth Amendment, regardless of
> whether the officer has probable cause to arrest the suspect. An
> officer who enters a person's home to make an arrest must have:
> (1) a warrant; (2) consent; or (3) an exigent circumstance."[28]

d.  In June 2007 then-Secretary of Homeland Security Michael Chertoff,
wrote in a letter to Senator Christopher Dodd that:

---

[26] Federal Law Enforcement Training Centers, ICE Administrative Removal Warrants, FLETC.GOV
(accessed Nov. 21, 2025), https://www.fletc.gov/ice-administrative-removal-warrants-mp3.
[27] FEDERAL LAW ENFORCEMENT TRAINING CENTERS, OFFICE OF CHIEF COUNSEL, GLYNCO,
GEORGIA, LEGAL TRAINING HANDBOOK, at 476 (2025)
,https://www.fletc.gov/sites/default/files/25_0106-LEG-LegalTrainingHandbook.pdf (section 18.10.3
Right of Access: Entering a Home to Arrest).
[28] *Id.*

**WHISTLEBLOWER AID**

*Report government and corporate lawbreaking.*
*Without breaking the law.*

REDACTED FOR CONGRESS

"In regard to your questions related to warrants, DRO issues a Warrant of Deportation/Removal (I-205) upon an order of removal by an immigration judge. … A warrant of removal is administrative in nature and does not grant the same authority to enter dwellings as a judicially approved search or arrest warrant."[29]

e. Also in 2007, ICE's then-Director of the Office of Congressional Relations, Karyn Lang wrote to Representative Zoe Lofgren:

"Warrants of removal are administrative in nature, and do not grant the same authority as a criminal search or an arrest warrant."[30]

19.     Legal organizations and commentators have echoed the belief that ICE's use of an administrative warrant (Form I-205) to enter a home without consent is <u>unconstitutional</u>, and thus unlawful. In doing so, these sources further illuminate why ICE rules had always prevented it. For example:

a.     *Cardozo School of Law, Immigration Justice Clinic:* Cardozo Law's Immigration clinic conducted a comprehensive study of ICE authorities and operations, under the guidance of an Advisory Panel comprised of senior law enforcement including a number of former police chiefs and commissioners: **"When an ICE agent enters a home without consent, armed only with an administrative warrant, it is a constitutional violation that goes to the heart of the Fourth Amendment.** … DHS's own regulations and policies incorporate the constitutional requirements..."[31]

---

[29] Sec. Chertoff to Sen. Dodd, Regarding an ICE operations in New Haven, Conn (Jun. 14, 2007), https://www.scribd.com/document/22093146/Michael-Chertoff-Letter-to-Senator-Christopher-June-14-2007; *see also* Nina Bernstein, *Hunts for Fugitive Aliens' Lead to Collateral Arrests,* N.Y. TIMES (July 23, 2007), https://www.nytimes.com/2007/07/23/nyregion/23operation.html?unlocked_article_code=1.9E8.ecL7._A35JMzw4CUI&smid=url-share ("The Fugitive Operations Teams responsible do not carry search warrants or arrest warrants approved by a judge, Mr. Chertoff noted, and their [ICE's] administrative warrants of deportation do not allow entry into dwellings without consent").

[30] ICE Dir. of Office of Congressional Relations Lang to Rep. Lofgren, Letter Regarding ICE Procedures, (March 14, 2007), https://www.publiccounsel.net/wp-content/uploads/2014/07/ICE-Warrants-Practice-Advisory.pdf.

[31] Bess Chiu et al., *Constitution on ICE: A Report on Immigration Home Raid Operations*, 6, Cardozo Immigration Justice Clinic (2009), https://larc.cardozo.yu.edu/cgi/viewcontent.cgi?article=1109&context=faculty-articles; *see also, id.,* ("[A]

WHISTLEBLOWER
AID

*Report government and corporate lawbreaking.*
*Without breaking the law.*

REDACTED FOR CONGRESS

    b.      *Commonwealth of Massachusetts ICE Practice Advisory*: "These administrative warrants, because they are not true warrants issued by a neutral magistrate, do not give ICE officials authority to enter a place where there is a reasonable expectation of privacy."[32]

20.      As articulated in longstanding ICE and DHS protocols, and by numerous legal commentators, our clients understand that to gain entry to constitutionally protected areas – especially the inside of one's home – ICE agents require a judicial warrant or voluntary consent. The Fourth Amendment guarantee against warrantless entry into the home is a fundamental privacy protection against government overreach.[33]

21.      DHS's new policy to permit arrests in an alien's residence, without a judicial warrant or consent, is a complete break from the law and undercuts the Fourth Amendment and the rights it protects. As far as our clients understand, DHS has failed to articulate any change in the law to allow for a policy reversal of this magnitude.

---

search conducted without a judicial warrant issued by an impartial magistrate is presumed to be in violation of the Fourth Amendment of the Constitution. Administrative warrants do not authorize agents to enter homes without consent because they are not issued by impartial magistrates. However, even where probable cause exists to make an arrest, government agents may not enter a home without a judicial warrant. The nature of the arrest — criminal vs. civil-immigration — has no bearing on the constitutional protections applied to the home").

[32] Committee for Public Counsel Services, *A Practice Advisory on ICE Use of Administrative Warrants and True Warrants in Immigration and Criminal Enforcement*, Massachusetts (Feb. 19, 2013), https://www.publiccounsel.net/wp-content/uploads/2014/07/ICE-Warrants-Practice-Advisory.pdf.

[33] *See Payton v. New York*, 445 U.S. 573, 583 - 590 (1980) (describing the procedural and legal history protecting the sanctity of the home from warrantless searches).

**Real Risks of ICE Overreach**

22.        It is hard to overstate the significance of basing such a large expansion in arrest powers entirely on a non-public, little substantiated agency policy memo. In light of the Trump Administration's goal to recruit 10,000 new ICE agents,[34] this expansion of ICE's arrest authority threatens the rights and safety of aliens and U.S. citizens alike. During the ongoing immigration enforcement crackdown, ICE agents have frequently targeted the wrong residence[35] and arrested many U.S. citizens.[36] The escalation of new reports about innocent US citizens being harmed by ICE agents are continuous, including:

    a.        In April 2025, ICE agents mistakenly entered the home of U.S. citizens in Oklahoma.[37] ICE agents were seeking the previous owners, who had since moved out.[38] A mother and daughter were left traumatized after having their phones, laptops, and cash seized while ICE agents forced them to stand in the rain outside their home.[39]

    b.        On May 15, 2025, ICE raided the wrong home of a couple in Madison, South Dakota.[40] The couple discovered ICE's intrusion after they returned home from work to find their front doors open.[41] Upon investigation, local authorities confirmed that ICE visited their residence in

---

[34] Zolan Kanno-Youngs & Hamed Aleaziz, *ICE Set to Vastly Expand Its Reach With New Funds*, N.Y. Times (Jul. 12, 2025), https://www.nytimes.com/2025/07/12/us/politics/ice-expansion-concerns.html.

[35] One of our clients is familiar with situations in which errors exist in the USCIS records, such as mismatched names and alien numbers. ERO has no systematic way to correct such errors and they usually persist until someone in USCIS makes an ad hoc correction. Errors can also happen in judicial orders, and these are usually only fixed when a DHS lawyer catches the error and seeks a correction from an immigration judge.

[36] Nicole Foy, *We Found That More Than 170 U.S. Citizens Have Been Held by Immigration Agents,* ProPublica (Oct. 16, 2025),
https://www.propublica.org/article/immigration-dhs-american-citizens-arrested-detained-against-will. (reporting that ICE has arrested at least 170 U.S. citizens in recent months).

[37] Nicole Acevedo, *U.S.-citizen family 'traumatized' after ICE raided their Oklahoma home in search of someone else*, NBC NEWS (April 30, 2025),
https://www.nbcnews.com/news/latino/us-citizen-family-traumatized-ice-raid-rcna203700.

[38] *Id.*

[39] *Id.*

[40] Beth Warden, *Madison couple claims ICE raid at wrong house,* DAKOTA NEWS NOW (May 15, 2025), https://www.dakotanewsnow.com/2025/05/16/madison-couple-claims-ice-raid-wrong-house/?outputType=amp.

[41] *Id.*

REDACTED FOR CONGRESS

**WHISTLEBLOWER**

**AID**

*Report government and corporate lawbreaking.*
*Without breaking the law.*

search of someone else unaffiliated with the couple.[42] No warrant or notice was provided.[43]

c.       On June 12, 2025, ICE raided the home of a pregnant U.S. citizen in Huntington Park, California.[44] ICE officers approached the mother's residence with a warrant for her husband, Jorge Medina; however, the warrant was addressed to a "David Medina."[45] She explained that her husband was gone, and watched as ten heavily armed ICE officers swept in to search her home.[46]

**Request for Investigation to Stop the Harm to Innocent People**

23.       Our clients submit that ICE's new policy allowing entrance into individuals' private spaces and homes to conduct arrests without a judicial warrant runs afoul of legal precedent and the Constitution. Further, DHS's vague, and largely non-existent, justification of the policy change, is legally faulty. Moreover, the secretive rollout and retaliation against those who have pushed back against the May 12 Memo and its new policy require scrutiny from oversight authorities.

24.       The public at large – including law firms,[47] non-government organizations,[48] and others offering immigration support – are operating with the understanding that, under the Fourth Amendment, ICE must have a judicial warrant to enter a residence to conduct an arrest. This disconnect sets the stage for angry – and potentially violent – interactions between ICE agents, and confused members of the public, believing the Fourth Amendment allows them to refuse ICE's entry into their home.

---

[42] *Id.*

[43] *Id.*

[44] Josh DuBose, *DHS Secretary Kristi Noem attends ICE raid at Los Angeles County home*, KTLA5 NEWS (Jun. 12, 2025), https://ktla.com/news/local-news/dhs-secretary-kristi-noem-attends-ice-raid-at-home-of-pregnant-l-a-county-mother/.

[45] *Id.*

[46] *Id.*

[47] Eric Castelblanco, *Does ICE Need a Warrant? Know Your Rights at Home and in Public*, Castelblanco Law Group APLC (Jun. 2, 2025), https://castelblanco.com/does-ice-need-a-warrant/.

[48] NIJC, *Know Your Rights if You Encounter ICE*, National Immigrant Justice Center (last accessed Nov. 21, 2025), https://immigrantjustice.org/for-immigrants/know-your-rights/ice-encounter/.

**REDACTED FOR CONGRESS**

WHISTLEBLOWER
AID

*Report government and corporate lawbreaking.*
*Without breaking the law.*

25.      ICE's decision to ignore the judicial warrant requirement when targeting residents' homes impacts the due process rights of millions of undocumented immigrants;[49] any U.S. citizen spouses, children, and cohabitants - as well as any U.S. citizen in the way - when ICE targets the wrong residence.[50]

**Important policy changes to Fourth Amendment privacy rights should be made through a transparent statutory or legal process – not agency fiat.**

26.      We respectfully submit this disclosure for inquiry and investigation into ICE's new policy regarding the use of Form I-205 to arrest aliens in their place of residence and its legality under the Fourth Amendment.

*<signatures on the next page>*

---

[49] Jeffery Passel & Jens Krogstad, *U.S. Unauthorized Immigrant Population Reached a Record 14 Million in 2023*, Pew Research Center (Aug. 21, 2025), https://www.pewresearch.org/race-and-ethnicity/2025/08/21/u-s-unauthorized-immigrant-population-reached-a-record-14-million-in-2023/.
[50] Nicole Foy, *We Found That More Than 170 U.S. Citizens Have Been Held by Immigration Agents*, ProPublica (Oct. 16, 2025), https://www.propublica.org/article/immigration-dhs-american-citizens-arrested-detained-against-will (reporting that ICE has arrested at least 170 U.S. citizens in recent months).



*Report government and corporate lawbreaking.*
*Without breaking the law.*

Sincerely,

Andrew P. Bakaj, Esq.
Chief Legal Counsel
████████████████████████████.
███████████

David Kligerman, Esq.
Senior Vice President and Special Counsel
█████████████████████████████

Kyle Gardiner, Esq.
Senior Counsel
████████████████████████

Enclosures: As stated.

# EXHIBIT 1

REDACTED FOR CONGRESS

Office of the Director

U.S. Department of Homeland Security
500 12ᵗʰ Street, SW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

May 12, 2025

MEMORANDUM FOR:    All ICE Personnel

FROM:    Todd Lyons
Acting Director

SUBJECT:    Utilizing Form I-205, Warrant of Removal

On January 20, 2025, President Donald J. Trump issued Executive Order 14159, *Protecting the American People Against Invasion*, directing the Secretary of Homeland Security to "ensur[e] the successful enforcement of final orders of removal." 90 Fed. Reg. 8443, 8444 (Jan. 20, 2025) (E.O. 14159). Essential to the removal of aliens subject to final orders of removal is the ability to locate and arrest them. To this end, certain supervisory immigration officers within both Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI)[1] are authorized to issue an administrative warrant, Form I-205, *Warrant of Removal* (Form I-205), for the arrest of an alien with a final order of removal. 8 C.F.R. § 241.2(a)(1). All U.S. Immigration and Customs Enforcement (ICE) special agents and deportation officers are authorized to execute Forms I-205. 8 C.F.R. § 287.5(e)(3)(iii)-(v).

Although the U.S. Department of Homeland Security (DHS) has not historically relied on administrative warrants alone to arrest aliens subject to final orders of removal in their place of residence, the DHS Office of the General Counsel has recently determined that the U.S. Constitution, the Immigration and Nationality Act, and the immigration regulations do not prohibit relying on administrative warrants for this purpose. Accordingly, in light of this legal determination, ICE immigration officers may arrest and detain aliens subject to a final order of removal issued by an immigration judge, the Board of Immigration Appeals (BIA), or a U.S.

---

[1] *See*, 8 C.F.R. § 241.2(a)(1)(i)-(xiii); ICE Delegation Order No. 0001, *Delegation of Authority to the Directors, Detention and Removal and Investigations, and to Field Office Directors, Special Agents in Charge and Certain Other Officers of the Bureau of Immigration and Customs Enforcement* (June 6, 2003); ICE Delegation Order No, 73005.1, *Immigration Enforcement Authority of the Director of the Office of Investigations* (Mar. 5, 2007); ERO Delegation Order 0001.1, *Re-delegation of Certain Detention and Removal Authority* (July 25, 2019).

REDACTED FOR CONGRESS

REDACTED FOR CONGRESS

district court judge or magistrate judge in their place of residence.[23] ICE immigration officers should consider all available enforcement mechanisms, including the use of a Form I-205 to arrest an alien in their place of residence, to achieve the requirements of E.O. 14159 in accordance with applicable law and policies.

This guidance informs the use of Forms I-205 and provides to ICE law enforcement personnel a reminder of the general limitations and exceptions that may apply when effectuating arrests in an alien's residence.

### General Guidelines

ICE law enforcement officers receive extensive training on the legal and procedural requirements for making administrative and criminal arrests. ICE personnel must remain cognizant of all existing laws and policies pertaining to arrests when carrying out civil immigration enforcement actions.

Prior to entering a residence to conduct an administrative immigration arrest pursuant to Form I-205, officers and agents must ensure the Form I-205 is properly completed and is supported by a final order of removal issued by an immigration judge, the BIA, a U.S. district court, or a magistrate judge. This is essential because that order establishes probable cause. Officers and agents must also have reason to believe that the subject alien resides at and is currently located in the address where the Form I-205 is to be served.

Before entering a residence pursuant to Form I-205, ICE officers and agents must "knock and announce." In announcing, officers and agents must state their identity and purpose. Following announcement, officers and agents must allow those inside the residence a reasonable chance to act lawfully. Should the alien refuse admittance, ICE officers and agents should use only a necessary and reasonable amount of force to enter the alien's residence, following proper notification of the officer's or agent's authority and intent to enter. ICE officers and agents must not effectuate an arrest in a third-party residence without consent, exigency, or a judicial warrant to enter the third-party residence.

To be clear, a Form I-205 is not a search warrant and should only be used to enter the residence of the subject alien to conduct an administrative immigration arrest. Once inside the residence, officers and agents may conduct a limited search of the immediate area to ensure officer safety

---

[2] This guidance addresses only the use of administrative warrants to arrest aliens subject to final orders of removal issued by an immigration judge, the BIA, or a U.S. district court judge or magistrate judge in their place of residence. This scoping is not intended to concede that an administrative warrant would be insufficient to arrest an alien in his or her place of residence prior to a final order of removal or where there is a final order of removal issued by an immigration officer.

[3] In granting summary judgment in *Kidd v. Mayorkas*, the U.S. District Court for the Central District of California held that the warrant requirements of the Fourth Amendment "require a judicial warrant to enter a home or its curtilage." 734 F. Supp. 3d 967, 984 (C.D. Cal. 2024). Unless and until this decision is vacated, ERO and HSI immigration officers may not enter into the curtilage for either a knock and talk or an immigration arrest absent a judicial warrant within the Central District of California.

only. Any evidence of a crime observed, where the incriminating nature is immediately apparent, may be seized under the plain view doctrine.

Consistent with longstanding practice, ICE officers and agents should not generally enter a residence before 6 a.m. or after 10:00 p.m. And, above all else, officers and agents should take reasonable measures to ensure officer safety.

## Exceptions

The standard exceptions to the Fourth Amendment warrant requirement apply equally in the context of Form I-205 warrants.

ICE officers and agents may obtain consent to enter a residence, including the residence of a third party, to make an arrest. Consent for entry must be provided voluntarily by someone with authority over the residence and may be limited in scope to certain areas of a property. Consent for entry may be revoked at any time by the authorizing party.

In the absence of a judicial warrant or a Form I-205 combined with an appropriate final order of removal, exigent circumstances can allow for ICE officers or agents to make entry into a residence. Some examples of exigent circumstances include: (1) hot pursuit; (2) probability of destruction of evidence; (3) the possibility of violence; (4) knowledge that a suspect is fleeing or attempting to flee; and (5) a substantial risk of harm to the persons involved or to the law enforcement process if the officer or agent must wait for a warrant.

After a lawful entrance, if an ICE officer or agent has a reasonable belief, supported by articulable facts, that a person who poses a danger to officers and agents is in the residence, officers and agents may conduct a cursory inspection of the spaces within the residence, limited to spaces where a person might be found.

The above information should serve as general guidance for consideration prior to and when effectuating an arrest in an alien's place of residence using a Form I-205 in combination with a final order of removal issued by an immigration judge, the BIA, a U.S. district court, or a magistrate judge.

Please direct any further questions to your management and the Office of the Principal Legal Advisor.

## Disclaimer

This guidance does not, is not intended to, and may not be construed to create or modify any right or benefit, substantive or procedural, enforceable at law by any party against the United States, its agencies, its officers, or any person.

REDACTED FOR CONGRESS

# EXHIBIT 2

REDACTED FOR CONGRESS


U.S. Immigration
and Customs
Enforcement

# INSTRUCTION

## I.    Explanation and Demonstration

**REDACTED FOR CONGRESS**

### A.    EPO 1: Describe the legal requirements to execute an administrative warrant.

1.    Administrative arrest warrant (Form I-200) (included in Attachments)

   a.    The basics

   1)    Issued with some, but not all, Notices to Appear (NTAs).

   2)    Directs ERO Officers to take named subjects into custody pursuant to INA § 236(a).

   b.    Executing an administrative arrest warrant

   1)    An administrative arrest warrant does NOT alone authorize a 4th Amendment search of any kind.

   2)    Access to the subject of an administrative arrest warrant will occur either in an "open field" or in a REP-protected area because of a warrant or probable cause exception (most commonly consent).

   3)    Example: ERO Officers armed with an administrative arrest warrant for Mr. Smith arrive at his residence. They approach Mr. Smith's front door via a walkway and knock. A man they believe to be Mr. Smith answers the door, and the ERO Officers ask if they can enter to ask him a few questions; Mr. Smith consents. While inside, the officers confirm Mr. Smith's identity and arrest him pursuant to the administrative arrest warrant.

2.    Warrant of removal/deportation (I-205) (included in Attachments)

   a.    The basics

   1)    Issued with every order of removal. Obviously, for persons already in custody, during their removal proceedings, this warrant does not require additional action on the part of the ERO Officer.

   2)    Directs ERO Officers to take named subjects into custody AND remove them pursuant to INA § 241(a).

   3)    Like arrests pursuant to administrative arrest warrants, these arrests often occur under circumstances in which the


initial encounter was consensual, but they do not have to occur in this way. They can also take place in conjunction with vehicle stops.

b. Executing warrant of removal/deportation

    1) A warrant of removal/deportation does NOT alone authorize a 4th Amendment search of any kind.

    2) Like administrative arrest warrants, these warrants are most often, but not always, used to arrest someone under circumstances in which the initial encounter was consensual.

    3) Example: Mr. Jones has been ordered removed, and as a result, there is a warrant of removal/deportation for him. He is one of the targets you have been tasked with bringing in. Armed with your warrant of removal, you can arrest him anywhere you can lawfully be, making sure you are also in compliance with policy. Based on your surveillance, you determine the best manner to arrest him is by using a vehicle stop (you have the required driver training and the required approval). Shortly after Mr. Jones drives away from his home, you turn on your emergency lights and he pulls over. You approach his vehicle, and after confirming his identity, you arrest him.

B. **EPO 2: Describe the legal requirements regarding a federal search and/or seizure warrant per Rule 41.**

"… [No] warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." 4th Amendment, U.S. Constitution

1. General rule for Rule 41 search warrants

    a. To comply with the 4th Amendment, ERO Officers must have a warrant, supported by Probable Cause, that authorizes the search and/or seizure, and the warrant must be executed in a reasonable manner. There is a strong preference for warrants under the Constitution. Whenever possible, you should get a warrant before you search or seize.

    b. As a cautionary note, each federal circuit may approach the issuance and execution of warrants slightly different, so when you report to your duty station and are called upon to "get" a warrant, make sure to check with fellow ERO Officers and local Assistant United States Attorneys (AUSAs) regarding the local requirements.

REDACTED FOR CONGRESS

U.S. Immigration
and Customs
Enforcement

REDACTED FOR CONGRESS

2.   A federal warrant may be issued under Rule 41 for any of the following:

    a.   Evidence of a crime.

    b.   Contraband, fruits of crime, or other items illegally possessed.

    c.   Property designed for use, intended for use, or used in committing a crime.

    d.   A person to be arrested or a person who is unlawfully restrained.

3.   Four primary federal warrants are identified in Rule 41 of the Federal Rules of Criminal Procedure:

    a.   Seizure/arrest warrant.

    b.   Search warrant.

    c.   Warrant seeking electronically stored information.

    d.   Warrant for a tracking device.

4.   **Note for any warrant**: If the ERO Officer intends to arrest a subject with an arrest warrant, then the ERO Officer must remember that to serve that arrest warrant, the ERO Officer must have lawful access to the subject.

    a.   In *Peyton v. New York*, 445 U.S. 573 (1980), the Supreme Court said it was permissible to conduct a search for an individual named in an arrest warrant in his/her dwelling when there is reason to believe that he/she is inside. It is generally preferred, however, to search based on a search warrant, even when armed with an arrest warrant. Certainly, if the home is not the subject's dwelling, a search warrant would be required.

    b.   Example: If an ERO Officer knows that a subject is located in a home at 123 Maple Street, the mere fact that the ERO Officer has an arrest warrant for the subject may not justify the entry into the home because entering would constitute a search, and arrest warrants generally only authorize seizures. However, if the ERO Officer knew the home was also the subject's residence and if he were able to articulate why he had reason to believe the subject was inside, he could rely on the arrest warrant for entry into the home to arrest the subject. If the home was not the subject's residence, the ERO Officer could obtain a search warrant based on Probable Cause.

5.   A federal warrant (search or arrest/seizure) consists of three parts: the actual warrant, the affidavit of probable cause, and the inventory/receipt.

a.   The actual warrant (types):

1)   Search warrant – The actual warrant identifying the place to be searched, the things to be seized, and the Probable Cause that those items will be found at a particular location.

2)   Arrest warrant – The actual warrant identifying the person to be arrested and the Probable Cause to support the arrest.

3)   Warrant seeking electronically stored information – The actual warrant identifying the electronically stored information to be seized.

4)   Tracking device warrant – The actual warrant identifying the person or property to be tracked.

b.   The affidavit of probable cause, which is attached to the warrant.

c.   The inventory/receipt is also attached to the warrant. The inventory lists the items taken from a location searched, and the receipt is provided to a person responsible for the location from which the property was taken.

d.   See Warrant Application (AO-106) and Search and Seizure Warrant (AO-93) forms (included in Attachments)

**EPO 3: Explain the process to obtain and execute a Rule 41 search warrant.**

1.   Obtaining a Rule 41 search warrant

a.   The ERO Officer prepares a warrant application with an attached affidavit of probable cause.

b.   The warrant and affidavit of probable cause is presented to the magistrate.
**Note**: Most U.S. attorney offices have a policy that an AUSA must review a warrant application before it can be submitted to a U.S. magistrate judge.

c.   The ERO Officer is placed under oath and swears to the accuracy of the information contained in the application and affidavit of probable cause.

**Note**: The magistrate will likely have questions about the application for the ERO Officer.

*REDACTED FOR CONGRESS*