**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GREATER BOSTON LATINO NETWORK, BRAZILIAN WORKER CENTER, INC., and MASSACHUSETTS COMMUNITIES ACTION NETWORK, <br><br> Plaintiffs, <br><br> v. <br><br> MARKWAYNE MULLIN, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; DAVID VENTURELLA, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendants. | Civil Action No. 1:26-cv-10472-JEK |

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR STAY**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................. 1

FACTUAL ASSERTIONS..................................................................................... 2

ARGUMENT.......................................................................................................... 3

    I.     The Court has jurisdiction to adjudicate Plaintiffs' claims.................................... 3

          A.     Plaintiffs have Article III standing................................................. 3

               1.     Plaintiffs have suffered and will continue to suffer injury-in-fact. ........................................................................ 3

               2.     The Lyons Memo is causing Plaintiffs' injuries. ........................... 8

               3.     Plaintiffs' injuries are redressable................................................ 10

                4.     Defendants mischaracterize Plaintiffs' injuries. .......................... 10

          B.     The Lyons Memo is a final agency action. ............................................. 11

          C.     Defendants cannot show Plaintiffs' claims are moot............................... 16

    II.     Defendants violated the APA when they promulgated the Lyons Memo. ................................................................................................................ 19

          A.     Plaintiffs assert a claim on their own behalf for Defendants' violation of administrative law. .................................................. 19

          B.     DHS Form I-205s do not satisfy the Fourth Amendment nor regulatory warrant requirements.......................................................... 19

          C.     The Lyons Memo is a substantive rule because it alters rights and obligations, with the effect of law........................................... 25

    III.    The Court cannot rule on Count III at the motion to dismiss stage. ..................... 26

    IV.    If the Court does not grant summary judgment, a preliminary stay is appropriate........................................................................................................ 27

    V.     The Court may set aside the Lyons Memo and grant declaratory judgment. .......................................................................................................... 28

CONCLUSION...................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Mass. v. U.S. Conf. of Cath. Bishops*,
    705 F.3d 44 (1st Cir. 2013)...................................................................................17

*AFL-CIO v. NLRB*,
    57 F.4th 1023 (D.C. Cir. 2023).......................................................................25, 26

*Aguiar-Carrasquillo v. Agosto-Alicea*,
    445 F.3d 19 (1st Cir. 2006)....................................................................................2

*Aiken v. Obledo*,
    442 F. Supp. 628 (E.D. Cal. 1977)........................................................................25

*Almeida-Sanchez v. United States*,
    413 U.S. 266 (1973).............................................................................................20

*Am. Acad. of Pediatrics v. Kennedy* (*AAP*),
    814 F. Supp. 3d 150 (D. Mass. 2026) ..................................................................6, 8

*Am. Academy of Pediatrics v. Kennedy*,
    823 F. Supp. 3d 141 (D. Mass. 2026)....................................................................15

*Am. Assoc. of Univ. Profs. v. Rubio*,
    802 F. Supp. 3d 120 (D. Mass. 2025) ....................................................................6

*Appalachian Power Co. v. EPA*,
    208 F.3d 1015 (D.C. Cir. 2000)............................................................................15

*Atieh v. Riordan*,
    727 F.3d 73 (1st Cir. 2013)..................................................................................27

*Batterton v. Marshall*,
    648 F.2d 694 (D.C. Cir. 1980)..............................................................................25

*Bennett v. Spear*,
    520 U.S. 154 (1997)........................................................................................12, 15

*Blackburn v. Snow*,
    771 F.2d 556 (1st Cir. 1985)................................................................................21

*Bos. Bit Labs, Inc. v. Baker*,
    11 F.4th 3 (1st Cir. 2021)................................................................................16, 17

*Cal. Cmtys. Against Toxics v. EPA*,
   934 F.3d 627 (D.C. Cir. 2019)......................................................................................12

*Calvary Chapel of Bangor v. Mills*,
   52 F.4th 40 (1st Cir. 2022)...........................................................................................17

*Centro de Trabajadores Unidos v. Bessent*,
   167 F.4th 1218 (D.C. Cir. 2026)...................................................................................14

*City of Los Angeles v. Patel*,
   576 U.S. 409 (2015).......................................................................................................22

*Cmty. Econ. Dev. Ctr. of Se. Mass. v. Bessent*,
   818 F. Supp. 3d 228 (D. Mass. 2026) .....................................................................4, 6, 8

*Commey v. United States*,
   No. 11-cv-40164, 2012 WL 1856613 (D. Mass. May 21, 2012)..................................20

*Commonwealth v. Trump*,
   No. 25-cv-12162, 2026 WL 1584837 (D. Mass. June 3, 2026)...................................14

*Coolidge v. New Hampshire*,
   403 U.S. 443 (1971).........................................................................................14, 24, 26

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024) ......................................................................................................29

*Cotzojay v. Holder*,
   725 F.3d 172 (2d Cir. 2013)..........................................................................................20

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
   452 F.3d 798 (D.C. Cir. 2006).......................................................................................26

*Dep't of Comm. v. New York*,
   588 U.S. 752 (2019).......................................................................................................27

*Doe v. Trump*,
   157 F.4th 36 (1st Cir. 2025)..........................................................................................30

*Doe v. Trump*,
   No. 1:25-cv-13946, 2026 WL 1170971 (D. Mass. Apr. 30, 2026)...............................14

*Dorcas Int'l Inst. of R.I. v. USCIS*,
   No. 26-cv-132, 2026 WL 1622708 (D.R.I. June 5, 2026) .............................................9

*Dorcas Int'l Inst. of R.I. v. USCIS*,
   No. 26-cv-132, 2026 WL 1695954 (D.R.I. June 11, 2026) ...........................................9

*Ellis v. Bhd. of Ry. Airline & S.S. Clerks, Freight Handlers, Express & Station Emps.*,
466 U.S. 435 (1984)...........................................................................................................16

*FBI v. Fikre*,
601 U.S. 234 (2024)..............................................................................................16, 17, 18

*Fed. Election Comm'n v. Cruz*,
596 U.S. 289 (2022)..............................................................................................................9

*Federal Defenders of San Diego, Inc. v. U.S. Sent'g Comm'n*,
680 F. Supp. 26 (D.D.C. 1988).............................................................................................7

*Feitoza v. Noem*,
No. 26-cv-40011, 2026 WL 252422 (D. Mass. Jan. 30, 2026)..........................................15

*Food and Drug Admin. v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024).................................................................................................. *passim*

*ForUsAll, Inc. v. U.S. Dep't of Labor*,
691 F. Supp. 3d 14 (D.D.C. 2023)......................................................................................14

*Foss v. Marvic, Inc.*,
814 F. Supp. 3d 171 (D. Mass. 2026) ..................................................................................2

*Fothergill v. United States*,
566 F.3d 248 (1st Cir. 2009)..................................................................................................3

*Franklin v. Massachusetts*,
505 U.S. 788 (1992).............................................................................................................14

*Griffin v. Wisconsin*,
483 U.S. 868 (1987).................................................................................................20, 22, 23

*Guerrero Orellana v. Moniz*,
802 F. Supp. 3d 297 (D. Mass. 2025) .................................................................................28

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)...............................................................................................................6

*Housatonic River Initiative v. U.S. EPA, New Eng. Region*,
75 F.4th 248 (1st Cir. 2023).................................................................................................27

*Illinois v. McArthur*,
531 U.S. 326 (2001).............................................................................................................19

*Illinois v. Noem*,
813 F. Supp. 3d 282 (D.R.I. 2025).................................................................................29, 30

*Kyllo v. United States*,
　533 U.S. 27 (2001)..................................................................................................20

*Lopez-Rodriguez v. Mukasey*,
　536 F.3d 1012 (9th Cir. 2008) ...............................................................................20

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992)..................................................................................................3

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*,
　496 F. Supp. 3d 600 (D. Mass. 2020) ....................................................................28

*Montalvo-Huertas v. Rivera-Cruz*,
　885 F.2d 971 (1st Cir. 1989)....................................................................................3

*Louisiana ex rel. Murrill v. FDA*,
　175 F.4th 310 (5th Cir. 2026) ................................................................................29

*Murthy v. Missouri*,
　603 U.S. 43 (2024)....................................................................................................3

*N.H. Hosp. Assoc. v. Azar*,
　887 F.3d 62 (1st Cir. 2018)..............................................................................25, 26

*N.H. Youth Movement v. Scanlan*,
　No. 24-cv-291, 2026 WL 323171 (D. Mass. Feb. 6, 2026)..................................7, 9

*N.J. Dep't of Env't Prot. v. EPA*,
　626 F.2d 1038 (D.C. Cir. 1980)..............................................................................25

*Narrigan v. Goldberg*,
　170 F.4th 14 (1st Cir. 2026)....................................................................................11

*Nat'l Ass'n of Consumer Advocs. v. Uejio*,
　521 F. Supp. 3d 130 (D. Mass. 2021) ......................................................................4

*Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*,
　779 F. Supp. 3d 149 (D.N.H. 2025).......................................................................7, 9

*Nat'l Educ. Ass'n-N.H. v. NH Att'y Gen.*,
　806 F. Supp. 3d 166 (D.N.H. 2025).........................................................................7

*Nat'l Min. Ass'n v. McCarthy*,
　758 F.3d 243 (D.C. Cir. 2014)................................................................................14

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*,
　No. 26-cv-10877, 2026 WL 1601790 (D. Mass. June 4, 2026).......................4, 6, 7

*Nat'l Sec. Couns. v. C.I.A.*,
    931 F. Supp. 2d 77 (D.D.C. 2013)......................................................................................25

*Nat'l TPS All. v. Noem*,
    166 F.4th 739 (9th Cir. 2026) ...................................................................................29, 30

*Nava v. Dep't of Homeland Sec.*,
    435 F. Supp. 3d 880 (N.D. Ill. 2020) ................................................................................13

*Ohio v. EPA*,
    603 U.S. 279 (2024)..........................................................................................................27

*Pablo Sequen v. Albarran*,
    814 F. Supp. 3d 1005 (N.D. Cal. 2025) ............................................................................13

*Pablo Sequen v. Albarran*,
    No. 25-cv-6487, 2026 WL 1805114 (N.D. Cal. June 23, 2026)..................................29, 30

*Payton v. New York*,
    445 U.S. 573 (1980)..........................................................................................................24

*Phila. Yearly Meeting of the Religious Soc'y of Friends v. U.S. Dep't of
    Homeland Sec.*,
    No. 25-cv-0243, 2026 WL 280089 (D. Md. Feb. 3, 2026).......................................12, 13, 15

*Pickus v. U.S. Bd. of Parole*,
    507 F.2d 1107 (D.C. Cir. 1974).........................................................................................25

*Portsmouth v. Lewis*,
    813 F.3d 54 (1st Cir. 2016)...............................................................................................16

*Presidents' All. on Higher Educ. & Immigr. v. Noem*,
    824 F. Supp. 3d 168 (D. Mass. 2026) ....................................................................... *passim*

*Ramirez v. U.S. Immigr. & Customs Enf't*,
    310 F. Supp. 3d 7 (D.D.C. 2018).......................................................................................13

*Rian Immgr. Ctr. v. Cuccinelli*,
    No. 19-cv-11880, 2020 WL 6395575 (D. Mass. Nov. 2, 2020) ...........................................18

*Sierra Club v. EPA*,
    955 F.3d 56 (D.C. Cir. 2020).............................................................................................14

*Silva-Rengifo v. Att'y Gen. of U.S.*,
    473 F.3d 58 (3d Cir. 2007).................................................................................................22

*Singh v. Gonzales*,
    494 F.3d 1170 (9th Cir. 2007) ...........................................................................................22

*Soundboard Ass'n v. FTC*,
888 F.3d 1261 (D.C. Cir. 2018)..................................................................................14

*Texas v. United States*,
555 F. Supp. 3d 351 (S.D. Tex. 2021) ........................................................................12

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)..............................................................................................28, 29

*U.S. Army Corps of Eng'rs. v. Hawkes Co.*,
578 U.S. 590 (2016)....................................................................................................12

*United States v. Bain*,
874 F.3d 1 (1st Cir. 2017)...........................................................................................19

*United States v. Berryman*,
717 F.2d 651 (1st Cir. 1983)........................................................................................21

*United States v. Knights*,
534 U.S. 112 (2001).....................................................................................................21

*United States v. Lucas*,
499 F.3d 769 (8th Cir. 2007) (plurality opinion) ................................................20, 23

*United States v. Streifel*,
665 F.2d 414 (2d Cir. 1981).........................................................................................21

*United States v. U.S. Dist. Ct. for E. Dist. of Mich.*,
407 U.S. 297 (1972).....................................................................................................21

*United States v. Weikert*,
504 F.3d 1 (1st Cir. 2007).....................................................................................20, 21

*United States v. Werra*,
638 F.3d 326 (1st Cir. 2011)........................................................................................20

*V. Real Est. Grp., Inc. v. USCIS*,
85 F. Supp. 3d 1200 (D. Nev. 2015)............................................................................11

*Victim Rts. L. Ctr. v. U.S. Dep't of Educ.*,
788 F. Supp. 3d 70 (D. Mass. 2025), *appeal dismissed*, No. 25-1787, 2026
WL 374364 (1st Cir. Jan. 15, 2026).............................................................4, 8, 9, 10

*Wyman v. James*,
400 U.S. 309 (1971).....................................................................................................22

*Wyoming v. Houghton*,
526 U.S. 295 (1999).....................................................................................................19

**Statutes**

5 U.S.C. § 702...................................................................................................................11

5 U.S.C. § 705.........................................................................................................27, 29, 30

8 U.S.C. § 1357(a)(2)..........................................................................................................13

**Other Authorities**

8 C.F.R. § 287.8(c)(2)(ii) ...............................................................................................24, 25

*Disposition Codes, Descriptions and Categories*, U.S. Customs & Border
    Protection (July 2024), https://www.cbp.gov/sites/default/files/2024-
    07/data_dictionary_redacted.pdf...........................................................................23

*ICE Administrative Removal Warrants*, Fed. Law Enf't Training Ctrs.,
    https://perma.cc/CAA2-VARE (last accessed July 24, 2026) ...................................13

Memorandum from Acting Dir., ICE Off. of Det. and Removal Operations, to
    Field Off. Dirs. (Mar. 27, 2006),
    https://www.ice.gov/doclib/foia/dro_policy_memos/09684drofieldpolicymanu
    al.pdf ......................................................................................................................23

**INTRODUCTION**

Over one year ago, Acting Director of U.S. Immigration and Customs Enforcement (ICE) instituted a new policy—the Lyons Memo—instructing ICE officers they can use Form I-205s to forcibly enter homes and arrest residents without probable cause and without valid judicial warrants. Under the purported authority of this Memo, ICE has arrested people in their homes: dragging a U.S. citizen into the cold in his underwear; banging down a door with a battering ram.

The Lyons Memo directly contradicts the advice and training Plaintiffs have provided for years. Plaintiffs are non-profit organizations that serve Massachusetts' immigrant communities through Know-Your-Rights presentations, educational materials, and counseling on Fourth Amendment rights at home. The Memo directly interferes with Plaintiffs' abilities to fulfill their missions: they are now swamped with calls from concerned community members and are unable to provide reliable counseling. They have also been forced to divert resources from other core activities to address the Memo. And the Memo damages Plaintiffs' reputations by calling into question the credibility of advice they have been providing. Plaintiffs cannot afford for the Lyons Memo to exist any longer. They respectfully ask this Court to vacate it or issue a preliminary stay.

Plaintiffs have demonstrated that the Memo violates the Fourth Amendment and Defendants' own regulations. And they have demonstrated that Defendants issued what is a substantive rule in secret, without opportunity for public comment. The Lyons Memo therefore violates the Administrative Procedure Act (APA) and must be vacated.

Defendants dispute none of the facts necessary for the Court to reach this conclusion. Instead, they raise meritless jurisdictional arguments. They claim that Plaintiffs lack standing, relying on a misinterpretation of the Supreme Court's *Alliance* decision—an interpretation numerous courts in this Circuit have rejected. They claim that the Lyons Memo is "nothing more than a guidance document" despite its seismic legal consequences for immigrants, ICE officers,

1

and Plaintiffs. And they claim that this case is moot, while reserving the right to return to the unconstitutional practice at any moment. Defendants' legal contentions are similarly meritless. Accordingly, Plaintiffs request that the Court vacate the Lyons Memo in its entirety.

## FACTUAL ASSERTIONS

Defendants do not dispute Plaintiffs' Statement of Material Facts, ECF No. 27 at 2–5 (Pls.' Br.) (SUMF); ECF No. 31 at 6–8 (Defs.' Br.) (setting forth *supplemental* facts but not contesting Plaintiffs' Statement of Facts); L.R. 56.1 ("A party opposing the motion [for summary judgment] shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried"). This Court should therefore deem all the facts Plaintiffs set forth in their Statement as admitted, *see Foss v. Marvic, Inc.*, 814 F. Supp. 3d 171, 181 (D. Mass. 2026), and consider Plaintiffs' motion for summary judgment on that record, *see Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir. 2006).

As for Defendants' Statement of Supplemental Undisputed Material Facts, Defs.' Br. at 6–8, Plaintiffs contest the following facts:

*Defendants' ¶ 4 is contested*. The BWC is a membership-based organization whose members are mainly Latinx immigrants. ECF No. 11 ¶ 18 (Am. Compl.). Many of BWC's members are asylum seekers, individuals with TPS status, and those newly arrived in the United States. Ex. 4 ¶¶ 3, 5–7 (BWC Decl.). Defendants' ¶ 4 is also immaterial, as Plaintiffs are not asserting associational standing.

*Defendants' ¶ 6 is contested*. The Lyons Memo was "applied in operations in Chicago" as well. Ex. 2 ¶ 13(c) (Schwank Decl.). Defendants' ¶ 6 is also immaterial.

*Defendants' ¶ 7 is contested*. It is unconfirmed that Form I-205s have not been used for home arrests in Massachusetts. Defendants' ¶ 7 is also immaterial.

*Defendants' ¶ 10 is contested.* There is nothing in the record to explain who the "[r]elevant

2

ICE staff" are and how they have been informed of Defendant Mullin's alleged pause of the practice. Defs.' Br. Ex. A ¶ 11 (Castano Decl.). Defendants' ¶ 10 is also immaterial.

ARGUMENT

**I.       The Court has jurisdiction to adjudicate Plaintiffs' claims.**

**A.       Plaintiffs have Article III standing.**

Plaintiffs GBLN, BWC, and MCAN have organizational standing to bring this lawsuit. Each organization has suffered "concrete, particularized, and actual" injuries because the Lyons Memo has impaired their ability to carry out core activities and caused them reputational damage. *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (citation modified). These injuries are each "fairly traceable to the challenged action" and "redressable by a favorable ruling." *Id.* Plaintiffs exceed the required showing, as each Plaintiff need not independently satisfy Article III's standing requirements. *See Montalvo-Huertas v. Rivera-Cruz*, 885 F.2d 971, 976 (1st Cir. 1989).

Plaintiffs must establish standing with "the manner and degree of evidence required at the successive stages of litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). For the purposes of Defendants' motion to dismiss, the Court must accept Plaintiffs' factual pleadings as true. *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009). For the purposes of preliminary relief, Plaintiffs must show they are "'likely' to establish each element of standing." *Murthy*, 603 U.S. at 58 (citations omitted). And for purposes of their motion for summary judgment, Plaintiffs must "'set forth' by affidavit or other evidence 'specific facts'" that establish standing. *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)). Defendants have not disputed—let alone produced evidence that goes against—any of Plaintiffs' factual assertions in support of standing. Plaintiffs more than satisfy their standing burden for all motions at issue.

**1.  Plaintiffs have suffered and will continue to suffer injury-in-fact.**

"An organization may establish Article III standing [] if it can show that the defendant's

3

actions cause a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's abstract social interests.'" *Nat'l Ass'n of Consumer Advocs. v. Uejio*, 521 F. Supp. 3d 130, 142 (D. Mass. 2021) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). "This is not a demanding standard, as only a perceptible impairment of an organization's activities is necessary for there to be an injury in fact." *Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*, No. 26-cv-10877, 2026 WL 1601790, at *4 (D. Mass. June 4, 2026) (citation modified). An organization can also satisfy Article III if it shows the challenged action risks harming its reputation or credibility. *See Cmty. Econ. Dev. Ctr. of Se. Mass. v. Bessent*, 818 F. Supp. 3d 228, 247 (D. Mass. 2026) (organizational plaintiff had standing because the IRS policy change "directly undermines [plaintiff]'s credibility"); *Victim Rts. L. Ctr. v. U.S. Dep't of Educ.*, 788 F. Supp. 3d 70, 84–85 (D. Mass. 2025), *appeal dismissed*, No. 25-1787, 2026 WL 374364 (1st Cir. Jan. 15, 2026) (challenged action "will harm [plaintiff's] reputation in the community, demonstrating concrete harm").

Plaintiffs have sufficiently shown these two types of injury-in-fact.[1]

*First*, the Lyons Memo directly affects, interferes with, and perceptibly impairs Plaintiffs' core activities. Am. Compl. ¶¶ 74–94; Pls. Br. at 27–32. Plaintiffs' Amended Complaint and declarations detail how the Lyons Memo undermines their ability to provide reliable Fourth Amendment counseling and training—a core activity of all three Plaintiffs. Am. Compl. ¶ 84; Ex. 3 ¶¶ 8–13 (GBLN Decl.); Ex. 4 ¶¶ 6–13 (BWC Decl.); Ex. 5 ¶¶ 7–10 (MCAN Decl.). They also explain that the new policy requires them to re-work their Know-Your-Rights trainings and associated educational materials, conduct new trainings for both staff and community members,

---

[1] Plaintiffs' injuries for standing purposes mirror those they asserted as irreparable harm. *See* Pls.' Br. at 25–33. Plaintiffs incorporate their description of those injuries here.

4

and respond to the surge of urgent requests for counseling, straining their limited resources. Am. Compl. ¶ 76; Ex. 3 ¶¶ 24–27 (GBLN Decl.); Ex. 4 ¶¶ 23–24, 26–38 (BWC Decl.); Ex. 5 ¶¶ 21–23, 28–31 (MCAN Decl.). The Lyons Memo is forcing Plaintiffs to divert time and money away from their other core activities. Am. Compl. ¶ 76; Ex. 3 ¶ 29 (GBLN Decl.); Ex. 4 ¶¶ 39–42 (BWC Decl.); Ex. 5 ¶¶ 32–34 (MCAN Decl.). The Lyons Memo also impedes Plaintiffs' efforts to help immigrants fill out Medicaid and FAFSA applications—another core activity—as community members are reluctant to submit their addresses to the federal government given the risk of home invasion. Ex. 3 ¶¶ 20, 22 (GBLN Decl.); Ex. 4 ¶¶ 43, 46 (BWC Decl.).

Defendants argue that the Supreme Court's decision in *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), foreclosed standing based on these types of injuries, particularly those related to "resource diversion." Defs.' Br. at 13–14. Not so. In *Alliance*, pro-life medical associations asserted standing to oppose the FDA's approval of mifepristone (an abortion-inducing drug) based on their expenditure of "considerable resources" on "drafting citizen petitions to FDA, as well as engaging in public advocacy and public education[]" to oppose the FDA's mifepristone decision. 602 U.S. at 394. The Court held that an organization cannot manufacture standing by expending resources to object to an action with which it disagrees on ideological grounds. *Id.* However, the Court was careful to maintain that an organization *can* show standing if the challenged action directly interferes with and impedes the organizational plaintiff's mission and its pre-existing core activities. *See id.* at 395.

Following *Alliance*, this Court explained that a plaintiff establishes standing "if the diversion of resources furthers a core business activity of the organization that is not issue advocacy or lobbying and, thus, is not merely an effort to oppose the challenged conduct." *Presidents' All. on Higher Educ. & Immigr. v. Noem*, 824 F. Supp. 3d 168, 188 (D. Mass. 2026);

5

*see Nat'l Parks*, 2026 WL 1601790, at *5 (interpreting *Alliance* as holding that where government action "compel[s]" an organization to "divert resources to counteract the effects of a government action on its existing operations and members," that organization has standing). And this Court has rejected the very misreading of *Alliance* that Defendants advance. *See, e.g.*, *Nat'l Parks*, 2026 WL 1601790, at *4 (rejecting defendants' argument that "*Alliance* . . . held that resource diversion can essentially never constitute injury-in-fact outside of the narrow factual circumstances recognized in *Havens*"); *Presidents' All.*, 824 F. Supp. 3d at 188 (the law "permit[s] injury to support standing post-*Alliance* . . . if the diversion of resources furthers a core business activity of the organization that is not issue advocacy or lobbying, and thus, is not merely an effort to oppose the challenged conduct"); *Am. Acad. of Pediatrics v. Kennedy* (*AAP*), 814 F. Supp. 3d 150, 159 (D. Mass. 2026) (same).

Here, Plaintiffs are not "spend[ing] [their] way into standing," *Alliance*, 602 U.S. at 394, "merely . . . oppos[ing] the challenged conduct," *Presidents' All.*, 824 F. Supp. 3d at 188, or "coming-to-the nuisance," *Am. Assoc. of Univ. Profs. v. Rubio*, 802 F. Supp. 3d 120, 180 (D. Mass. 2025). Plaintiffs do not allege that they have diverted *any* resources toward lobbying against the Memo. Instead, it is the Lyons Memo's direct interference with Plaintiffs' preexisting core activities that causes them concrete, ongoing injuries.

To begin, the Memo directly interferes with Plaintiffs' ability to counsel community members on their rights, conduct Know-Your-Rights trainings, and aid community members in the submission of social services applications, which are preexisting core activities. *See supra* Section I.A.1; *see also Alliance*, 602 U.S. at 395 (discussing the "perceptibl[e] impair[ment]" of the plaintiff's "ability to provide counseling and referral services" as a cognizable injury in *Havens*); *Bessent*, 818 F. Supp. 3d at 247 (community development organization had standing to

challenge "the IRS' abrupt change in policy" because that change "directly impacts [the organization's] ability to appropriately counsel its members"); *Nat'l Educ. Ass'n-N.H. v. NH Att'y Gen.*, 806 F. Supp. 3d 166, 189-90 (D.N.H. 2025) (nonprofit had standing where new "anti-DEI laws' vague and far-reaching scope . . . 'perceptibly impaired' [the educators' association] ability to train and counsel its members on their legal obligations"); *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 149, 176 (D.N.H. 2025) (organization had standing to challenge a "vague and confusing" policy as it "impaired [the organization's] ability to counsel members on steps they must take to comply with" their legal obligations).

Defendants' analogy to *Federal Defenders of San Diego, Inc. v. U.S. Sentencing Commission* is inapt. *See* Defs.' Br. at 15 (citing 680 F. Supp. 26 (D.D.C. 1988)). There, the court held that public defense organizations did not have standing to challenge changes to the sentencing guidelines because the organizations "retain[ed] their ability to represent their clients." *Fed. Defs.*, 680 F. Supp. at 31–32. Here, in contrast, Plaintiffs do *not* retain the ability to provide accurate, reliable counsel to the community members they serve.

As for Plaintiffs' injuries that stem from resource diversion, these too survive *Alliance.* As this Court has repeatedly explained, when a policy change forces a plaintiff to shift resources away from one pre-existing activity toward repairing the damage the policy has done to another, such diversion constitutes injury-in-fact. *See, e.g.*, *Nat'l Parks*, 2026 WL 1601790, at *5 (organizational plaintiff had standing where "at least some of Plaintiffs' resource diversion is allegedly intended to address the Order's negative effects on existing activities and members"); *N.H. Youth Movement v. Scanlan*, No. 24-cv-291, 2026 WL 323171, *6 (D. Mass. Feb. 6, 2026) (voting rights organization had standing where the policy change forced it to "implement[] additional steps in its pledge-to-vote program," "bring in additional volunteers to . . . help voters avoid the difficulties"

7

created by the policy change, and "implement new training" to continue its voter registration program); *Presidents' All.*, 824 F. Supp. 3d at 188–89 (organization had standing to challenge a policy that "triggered a flood of requests for assistance from member institutions and caused the organization to divert resources from its other initiatives in order to offer guidance to its members on responding to the federal government's actions."); *AAP*, 814 F. Supp. 3d at 159 (organization had standing where a policy change forced it "to divert resources away from its usual business activities because of the Challenged Actions, including by counseling member-doctors who have been directly impacted . . . ."). Here, Plaintiffs are diverting resources not toward opposing the Lyons Memo or the ideologies it espouses, but rather toward, for example, re-doing materials the Memo rendered obsolete and answering community members' questions regarding its impact.

*Second*, Plaintiffs have shown another injury-in-fact: the Lyons Memo threatens Plaintiffs' credibility and reputations within the communities they serve, as it contradicts their longstanding advice and previous trainings. Am. Compl. ¶ 85; Pls.' Br. at 32–33. This Court previously found such reputational injury to be sufficient for Article III standing. *See, e.g.*, *Bessent*, 818 F. Supp. 3d at 247–248; *Victim Rts. L. Ctr.*, 788 F. Supp. 3d at 85.

Defendants concede as much, but challenge Plaintiffs' allegations as "too vague and unsubstantiated." Defs.' Br. at 15–16. Plaintiffs' complaint and declarations substantiate this alleged harm, detailing how the Lyons Memo threatens their reputations. Am. Compl. ¶ 85 ("[C]onfusion, directly rooted in the Lyons Memo's contrary-to-law policy, calls Plaintiffs' reputation as reliable sources of immigration rights information into question"); Ex. 5 ¶ 25 (MCAN Decl.) ("MCAN and our affiliates have struggled to . . . maintain trust and credibility within the communities we serve."); Pls.' Br. at 32–33.

### 2.  The Lyons Memo is causing Plaintiffs' injuries.

The Lyons Memo also "causes" Plaintiffs' injuries for the purposes of Article III. By

8

upending the long-settled understanding of the Fourth Amendment and its protections, the Memo rendered Plaintiffs' existing Fourth Amendment guidance, trainings, and educational materials obsolete. *See, e.g.*, Ex. 3 ¶¶ 24–27 (GBLN Decl.); Ex. 4 ¶¶ 26, 28–30, 37–38 (BWC Decl.); Ex. 5 ¶¶ 26–27, 30 (MCAN Decl.). There are no intervening links in this causal chain, let alone "attenuated links." Defs.' Br. at 19. Indeed, Plaintiffs' injuries are the predictable consequence of an unlawful policy that changes the advice Plaintiffs can responsibly provide to their communities. *See, e.g.*, *Nat'l Educ. Ass'n*, 779 F. Supp. 3d at 176 (interference with plaintiffs' counseling was the "predictable—if not obvious" consequence of the government's vague DEI prohibition).

As for Plaintiffs' diversion of resources, such injuries also flow directly and predictably from the Lyons Memo. Courts within this Circuit have consistently held that spending money to update training materials or diverting resources away from other activities are the foreseeable results of policy changes like this one. *See, e.g.*, *Dorcas Int'l Inst. of R.I. v. USCIS*, No. 26-cv-132, 2026 WL 1622708, at *31 (D.R.I. June 5, 2026) ("Plaintiffs' injuries are fairly traceable to USCIS's action because, had the agency not implemented the Challenged Policies, Plaintiffs would not have had to divert resources in the way that they have, nor would they have been impaired from carrying out their usual, core business activities"), *judgment entered*, 2026 WL 1695954 (D.R.I. June 11, 2026) (citation modified); *Scanlan*, 2026 WL 323171, at *9 (finding "a clear causal nexus" between the policy change and plaintiffs' resource diversion injuries); *Victim Rts. L. Ctr.*, 788 F. Supp. 3d at 84–85 (resource diversion traceable to challenged policy); *Presidents' All.*, 824 F. Supp. 3d at 188–89 (the challenged action "predictably prompted the flood of requests for assistance . . . and the need for [plaintiff] to expend resources in response"). Such injuries "remain[] fairly traceable to [the Lyons Memo], even if the injury could be described in some sense as willingly incurred." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 297 (2022).

The same holds true for Plaintiffs' reputational injuries: the Lyons Memo contradicts years of advice Plaintiffs have provided, eroding Plaintiffs' credibility. *See Victim Rts. L. Ctr.*, 788 F. Supp. 3d at 96–97 (finding policy change caused reputational harm to plaintiff by limiting its ability to counsel clients as it had prior to the change).

### 3. Plaintiffs' injuries are redressable.

Plaintiffs' injuries are redressable because vacatur of the Lyons Memo would: (1) clarify the Fourth Amendment's bounds, allowing Plaintiffs to, once again, provide reliable counsel to community members; (2) obviate the need for new trainings and materials and reduce the surge in inquiries, allowing Plaintiffs to redistribute resources back to other core activities; (3) reduce the fear of home addresses being shared with the government, such that Plaintiffs could re-engage in Medicaid and FAFSA counseling work; and (4) vindicate Plaintiffs' prior Fourth Amendment guidance and ensure newly offered advice is accurate, ameliorating reputational injuries.

Defendants claim that vacatur will not redress Plaintiffs' injuries because it "will not remove the option of utilizing a Form I-205 to conduct an administrative immigration arrest." Defs.' Br. at 20. This is concerning for reasons beyond standing. Defendants' argument appears to be that—even if the Court concludes the challenged policy is unlawful—they can engage in the challenged conduct anyway. This is not a coherent attack on redressability. By this logic, no injury is redressable because a defendant could always ignore a court's ruling.

### 4. Defendants mischaracterize Plaintiffs' injuries.

Finally, while Defendants sometimes address Plaintiffs' declared injuries, they also often badly mischaracterize them. Plaintiffs do not bring a constitutional tort claim. *Contra* Defs.' Br. at 10 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 111 (1983) (alleged injury based on past civil rights violation in a non-APA case)). Plaintiffs do not claim that they as organizations or their community members have suffered or will suffer an unlawful search and seizure. *Contra id.*

10

at 11 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–13 (2013) (alleged injury based on "reasonable likelihood" of plaintiff being subject to an unlawful search and seizure in a non-APA case)). And Plaintiffs do not seek to vindicate third parties' individual Fourth Amendment rights, including those of their community members. *Contra id.* at 24–26.

Rather, Plaintiffs bring an administrative law claim: they assert their own rights under the APA to challenge the Lyons Memo as unlawful. Am. Compl. ¶¶ 99–132 (asserting APA claims); 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof."). The Lyons Memo has harmed and is continuing to harm Plaintiffs. *See supra* Section I.A.1–2. Until vacated, the Memo will undermine Plaintiffs' ability to reliably advise community members, carry out their other core activities, and maintain their reputations. *Id*. As a result, Plaintiffs suffer "ongoing injur[ies]," not speculative or future harm. *Narrigan v. Goldberg*, 170 F.4th 14, 19 (1st Cir. 2026). Therefore, Defendants' argument that Plaintiffs' injuries cannot support forward-looking relief fails. *See* Defs.' Br. at 10–13. So too does Defendants' argument that Plaintiffs are asserting third parties' rights. *See id.* at 24–26; *see also V. Real Est. Grp., Inc. v. USCIS*, 85 F. Supp. 3d 1200, 1210 n.2 (D. Nev. 2015) (holding organizations alleging USCIS violated the INA did not improperly assert third party rights because "[t]he harm alleged is injury suffered by the various business entities themselves and the right to a review of the USCIS's actions is a right that . . . Plaintiffs claim on behalf of themselves through the APA"); *Presidents' All.*, 824 F. Supp. 3d at 200–01 (holding that organizational plaintiff stated a contrary to law claim under the APA for the U.S. Department of Homeland Security's (DHS) termination of immigration records of *non-plaintiffs*).

## B.      The Lyons Memo is a final agency action.

Defendants do not contest that the Lyons Memo marks the consummation of the agency's

11

decision-making process and thus meets *Bennett's* first prong; they only challenge whether the Lyons Memo is an action "by which rights or obligations have been determined, or from which legal consequences will flow"—*Bennett*'s second prong. *See* Defs.' Br. at 20–23; *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation modified).

As Defendants themselves recognize, this second *Bennett* prong demands a "pragmatic" inquiry. Defs.' Br. at 20; *see U.S. Army Corps of Eng'rs. v. Hawkes Co*., 578 U.S. 590, 599 (2016). Courts have held that an agency's use of boilerplate language to claim that its action does not "create any right or benefit, substantive or procedural" does not negate an appreciable legal consequence. *See Presidents' All.*, 824 F. Supp. 3d at 183, 199 (holding that ICE's "boilerplate disclaimer that it is not a final action and does not create any legal rights or benefits is not conclusive on the issue" (citation modified)); *Phila. Yearly Meeting of the Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec.*, No. 25-cv-0243, 2026 WL 280089, at *6 (D. Md. Feb. 3, 2026) (same); *Texas v. United States*, 555 F. Supp. 3d 351, 390 (S.D. Tex. 2021) ("what the Memoranda say and do are different"). Courts must assess "the concrete consequences an agency action has or does not have as a result of the specific statutes and regulations that govern it." *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 637 (D.C. Cir. 2019).

The Lyons Memo has several important and concrete legal consequences.

*First*, the Lyons Memo has serious legal consequences for immigrants, as it alters their rights.[2] Specifically, the Memo instructs ICE officers that they may subject immigrants to warrantless home invasions and arrests—conducted without probable cause or a determination that the targets are likely to reside and be present at a particular address. The Memo does so in clear

---

[2] The Memo also has legal consequences for U.S. citizens. ICE officers have mistakenly arrested at least one U.S. citizen based on the Memo and policy it sets forth. *See* Am. Compl. ¶ 73.

12

violation of both the Fourth Amendment and immigration regulations. *See infra* Section II.B; Pls.' Br. at 11–17. This impact on immigrants' Fourth Amendment rights is a legal consequence for the purposes of the final agency action rule. *Cf. Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880, 885, 903 (N.D. Ill. 2020) (ICE's policy and practice of arresting individuals "without a warrant or an individualized determination that [they are] a flight risk," in alleged violation of 8 U.S.C. § 1357(a)(2), had appreciable "legal consequences," including that "ICE's decisions caused. . . [immigrants] to lose their freedom" (quoting *Bennett*, 520 U.S. at 177)); *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 23 (D.D.C. 2018) (ICE's decisions to place individuals in detention facilities without considering less restrictive placements, as statutorily required, "had immediate and significant legal consequences for [the individuals], who must bear detention in more restrictive settings").

*Second*, the Memo has direct legal consequences for ICE officers, as it redefines the scope of their authority and, therefore, their rights and obligations. The Lyons Memo purportedly authorizes ICE officers to undertake actions that the agency previously prohibited. *See* Am. Compl., Ex. C at 6 (2021 ICE ERO Training Handbook stated that "a warrant of removal/deportation does NOT alone authorize a 4th amendment search of any kind."); *ICE Administrative Removal Warrants*, Fed. Law Enf't Training Ctrs., https://perma.cc/CAA2-VARE (last accessed July 24, 2026) ("[U]nlike a criminal warrant issued by the federal court, a removal warrant does not authorize the ICE officer to enter into an [reasonable expectation of privacy] area to execute the warrant."). And the Memo has led to warrantless home arrests. *See* Pls.' Br. ¶ 16 (SUMF). In this way, the Memo has had an "immediate effect on [ICE's] day-to-day operations." *Pablo Sequen v. Albarran*, 814 F. Supp. 3d 1005, 1025 (N.D. Cal. 2025) (citation modified). Therefore, the Memo has concrete legal consequences. *Cf. Phila. Yearly*, 2026 WL 280089, at *4–

5 (finding an action was a final agency action where a 2025 memo provided DHS personnel an expanded scope of immigration enforcement authority, particularly where they could make arrests); *Doe v. Trump*, No. 1:25-cv-13946, 2026 WL 1170971, at *7 (D. Mass. Apr. 30, 2026) (policy "dictating the actions of USCIS employees and affecting the rights of the plaintiffs" constituted a final agency action).

*Third*, the Lyons Memo has a direct and immediate impact on Plaintiffs' day-to-day business operations. *See Franklin v. Massachusetts*, 505 U.S. 788, 796–97 (1992). Plaintiffs are inundated with calls for help and unsure of what legal advice to give, placing them in a precarious position that affects their operations. *Cf. Commonwealth v. Trump*, No. 25-cv-12162, 2026 WL 1584837, at *19 (D. Mass. June 3, 2026) (similar impacts satisfy *Bennett*'s second prong).

Defendants argue that because Lyons Memo does not *require* ICE officers to use Form I-205s to enter homes, no legal consequences flow from it. Defs.' Br. at 21–22.[3] But a policy can

---

[3] Defendants attempt to analogize the Lyons Memo to a string of out-of-Circuit decisions where courts held guidance was not a final agency action. *See* Defs.' Br. at 22. But all decisions are readily distinguishable. For example, in *Massachusetts Coalition for Immigrant Reform v. U.S. Department of Homeland Security*, the court explained that "DHS's Manual by its terms 'implements'—rather than augments or alters—[the statute's] preexisting requirements." 621 F. Supp. 3d 84, 96 (D.D.C. 2022). Such implementation of a preexisting requirement stands in stark contrast to the Lyons Memo, which announces a *new* understanding of the Fourth Amendment and sets forth *new* instructions that contradict the agency's preexisting guidance. *See also id.* (explaining that the manual's use of the mandatory "must" is not dispositive of whether it set forth the requirement). Defendants' other cited authority is also inapposite. *See ForUsAll, Inc. v. U.S. Dep't of Labor*, 691 F. Supp. 3d 14, 29 (D.D.C. 2023) (agency document "simply reminds [entities] of their duties under ERISA, describes the various risks associated with cryptocurrency investments, and communicates the Department's position"); *Sierra Club v. EPA*, 955 F.3d 56, 64 (D.C. Cir. 2020) (guidance document was not final agency action because, *inter alia*, it "does not subject [entities] to *new* penalties or enforcement risks" (emphasis added)); *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267–72 (D.C. Cir. 2018) (only discussing *Bennett*'s first prong); *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251–52 (D.C. Cir. 2014) (discussing whether guidance was a general statement of policy or legislative rule, and also highlighting that "[t]he Final Guidance may not be the basis for an enforcement action"); *Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1236 (D.C. Cir. 2026) (action "merely clarifie[d] . . . existing duties" (citation modified)).

14

have legal consequences and satisfy *Bennett* even where it institutes a directive that does not *require* action. For example, in *Presidents' Alliance*, the court explained that an agency "Broadcast Message" stating that ICE "can" and "may terminate SEVIS records for a variety of reasons" "espouses a definitive statement of the reasons ICE may terminate a SEVIS record, some of which, like a visa revocation, extend beyond those provided in statute or regulation." 824 F. Supp. 3d at 183, 199. Accordingly, the court held this message could have legal consequences and satisfy *Bennett* despite "not us[ing] 'mandatory language'" that "expressly direct[ed] ICE personnel to terminate SEVIS records under specific circumstances." *Id.* at 199; *see also id.* at 195–96 (holding that a different policy, which was unwritten but which the U.S. Department of State carried out, constituted a final agency action); *Feitoza v. Noem*, No. 26-cv-40011, 2026 WL 252422, at *3 (D. Mass. Jan. 30, 2026) (finding ICE's practice of making arrests at USCIS interviews to be final agency action, where an ICE spokesperson stated that certain individuals "may face arrest, detention, and removal," thereby *ratifying* but not *mandating* the allegedly unlawful arrests); *Am. Academy of Pediatrics v. Kennedy*, 823 F. Supp. 3d 141, 155 (D. Mass. 2026) (holding guidance to be final agency action and explaining, in response to the government's argument that it was "styled as sets of 'recommendations' that [they] assert are 'non-binding,'" that "Defendants fail to acknowledge the legal consequences" of the guidance); *Phila. Yearly*, 2026 WL 280089, at *1, *3–5 (holding that a 2025 DHS memo outlining a "general policy of permitting immigration officers to exercise their discretion and common sense in determining whether to engage in enforcement actions in or near a protected area" has legal consequences as it both determines the rights and obligations of immigration officers and expands the "range of scenarios under which immigration enforcement action could occur"); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000) (discussing "what is meant by 'binding,'" and explaining that "[i]f an agency

15

acts as if a document issued at headquarters is controlling in the field, . . . if it bases enforcement actions on the policies or interpretations formulated in the document, . . . then the agency's document is for all practical purposes 'binding,'" so as to be a final agency action). Thus, just because the Lyons Memo does not *require* ICE officers to use Form I-205s to enter homes to make warrantless arrests does not insulate it from this Court's review as a final agency action.

### C.    Defendants cannot show Plaintiffs' claims are moot.

"Federal judges decide only *live* controversies that will have a real effect on real parties in interest." *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021) (emphasis in original). A case no longer presents a controversy, and is moot, when "the parties lack a legally cognizable interest in the outcome" or "the court cannot give any effectual relief to the potentially prevailing party." *Portsmouth v. Lewis*, 813 F.3d 54, 58 (1st Cir. 2016). "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Bhd. of Ry. Airline & S.S. Clerks, Freight Handlers, Express & Station Emps.*, 466 U.S. 435, 442 (1984). "The 'heavy' burden of showing mootness is on the party raising the issue." *Bos. Bit Labs, Inc.*, 11 F.4th at 8.

A claim is not moot if (1) "a defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case" and (2) "there exists a reasonable expectation that the challenged conduct will be repeated after the suit's dismissal." *Id.* at 9 (citation modified). This rule—the voluntary-cessation exception—prevents a defendant from "suspend[ing] its challenged conduct after being sued, win[ning] dismissal, and later pick[ing] up where it left off." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). Again, the defendant bears the "formidable burden" of showing the conditions are not satisfied. *Id.* (citation modified); *Presidents' All.*, 824 F. Supp. 3d at 190.

This case presents a live controversy, as Plaintiffs continue to have a legally cognizable interest in the outcome of this matter. Until this Court vacates or upholds the Lyons Memo,

Plaintiffs cannot provide reliable advice regarding the scope of Fourth Amendment protections at home. Plaintiffs cannot rely on earlier trainings and materials. And they cannot resume the full scope of their core activities until the need for one-on-one counseling about the Lyons Memo abates. Furthermore, Defendants' purported "pause" compounds the uncertainty the Lyons Memo introduces, as Defendants could resume the practice at any moment, which exacerbates Plaintiffs' injury. This Court can provide Plaintiffs real relief by vacating the Lyons Memo.

Even assuming *arguendo* that Defendants' "pause" of the practice eliminated the live controversy, ECF No. 31-1 ¶¶ 10–12 (Castano Decl.), the voluntary-cessation exception applies.

Focusing on the first condition of the voluntary-cessation test, Defendants claim their "pause" was "not because of any consideration about this or any other litigation." Defs.' Br. at 23. Defendants instead assert that "the change in leadership at the Department of Homeland Security" drove the pause. *Id.* But they present no explanation for the new DHS Secretary's decision. Put another way, they have failed to set forth facts suggesting Defendant Mullin was motivated by anything other than a desire to evade the litigation he inherited. Furthermore, the cases on which Defendants rely are inapposite.[4] *See ACLU of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (holding the voluntary-cessation exception does not apply "when the challenged conduct"—there, a U.S. Health and Human Services funding grant—"ends because of an event"—there, the expiration of the funding contract—"that was scheduled *before* the initiation of the litigation, and is not brought about or hastened by any action of the defendant" (emphasis added)); *Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 48 (1st Cir. 2022) (holding the voluntary-cessation exception did not apply where COVID-related restrictions ended in response to the pandemic abating); *Bos. Bit Labs*, 11 F.4th at 10 (similar). In each of these cases, *external* events—not the

---

[4] Additionally, these cases were decided before *Fikre*.

defendant's voluntary actions—mooted the policies at issue: a contract expired; the pandemic ended. As this Court has held, "'[t]he existence of an independent reason' for Defendants' action 'is insufficient to demonstrate that the decision . . . was unrelated to the litigation' because otherwise 'a defendant could defeat the voluntary cessation exception and evade judicial review merely by advancing a credible cover story.'" *Rian Immgr. Ctr. v. Cuccinelli*, No. 19-cv-11880, 2020 WL 6395575, at *4 (D. Mass. Nov. 2, 2020) (quoting *KG Urban Enterps., LLC v. Patrick*, 969 F. Supp. 2d 52, 57 (D. Mass. 2013)); *see also Presidents' All.*, 824 F. Supp. 3d at 191 (finding defendant's argument that policy reversal was unrelated to pending litigation "not credible"). External events have not ended the practice set forth in the Memo. Instead, Defendants paused the practice after this litigation began. As a result, they fail to meet their "formidable burden" of demonstrating the voluntary-cessation exception does not apply. *Fikre*, 601 U.S. at 241.

Defendants do not even attempt to meet the second condition of the test—that "no reasonable expectation remains that [the defendant] will return to its old ways," *id.* (citation modified)—because they have openly told the Court they may return to the policy, *see* ECF No. 19-1 (Email Exchange) (refusing to enter a stipulation formally staying the policy during Defendants' proposed extension period); ECF No. 31-1 ¶ 10 (Castano Decl.) (policy "assessment is ongoing"). In so doing, Defendants expressly reserve the right to "un-pause" the policy at any time during or after Defendant Mullin's "assessment." Moreover, they take the position that, despite the temporary "pause," they are authorized to take actions that the Lyons Memo directs. Defs.' Br. at 20. Defendants have also not rescinded the Lyons Memo, replaced it with superseding guidance, disavowed its legal interpretation, or committed to provide notice before resuming its implementation. Thus, based on Defendants' own representations, there is a reasonable expectation they *will* "return to [their] old ways." *Fikre*, 601 U.S. at 241 (citation modified); *see*

18

*also Presidents' All.*, 824 F. Supp. 3d at 191 (ICE official's declaration that it has stopped implementing a policy provides no assurances about its future behavior).

## II.    Defendants violated the APA when they promulgated the Lyons Memo.

### A.    Plaintiffs assert a claim on their own behalf for Defendants' violation of administrative law.

Plaintiffs assert their own rights under the APA to challenge the Lyons Memo as a procedural and substantive violation of administrative law. *See supra* Section I.A.4; Am. Compl. ¶¶ 99–132. Accordingly, Defendants' argument that Plaintiffs cannot "assert the Fourth Amendment rights of others," Defs.' Br. at 25, is nothing more than misdirection. Plaintiffs are not asserting any Fourth Amendment violation, let alone those of third parties. *See supra* Section I.A.4. And, tellingly, Defendants do not cite a single APA case in support of their argument about Fourth Amendment standing. *See* Defs.' Br. at 24–26.

### B.    DHS Form I-205s do not satisfy the Fourth Amendment nor regulatory warrant requirements.

Defendants admit that Form I-205s are not judicial warrants. *See* Defs.' Br. at 27; *see also* Pls. Br. ¶ 4 (SUMF) (admitted). They acknowledge these forms are issued without a showing of probable cause of a crime, and not by a neutral and detached magistrate. *See, e.g.*, Defs.' Br. at 30–31. Nonetheless, they argue that the use of Form I-205s to arrest immigrants in their homes does not violate the Fourth Amendment. *See* Defs.' Br. at 27. This position contradicts settled law.

The touchstone of the Fourth Amendment is reasonableness, which courts assess by balancing the intrusion on an individual's privacy against the degree to which the seizure is needed to further the government's legitimate interests. *See Illinois v. McArthur*, 531 U.S. 326, 330 (2001); *Wyoming v. Houghton*, 526 U.S. 295, 299–300 (1999).

On the privacy side, a warrantless seizure can be reasonable if the individual has a diminished expectation of privacy. *See United States v. Bain*, 874 F.3d 1, 17 (1st Cir. 2017). The

Supreme Court has held that noncitizens have a reasonable expectation of privacy in their homes—the space the Fourth Amendment protects most vigilantly. *See Kyllo v. United States*, 533 U.S. 27, 34 (2001) (individuals generally have a reasonable expectation of privacy in the interior of their home); *Almeida-Sanchez v. United States*, 413 U.S. 266, 267, 273 (1973) (holding that a noncitizen had a "Fourth Amendment right to be free of 'unreasonable searches and seizures'"); *see also United States v. Werra*, 638 F.3d 326, 331–36 (1st Cir. 2011) (homeowners, tenants, and other types of residents have a reasonable expectation of privacy in their dwellings). This expectation of privacy extends to removable noncitizens. *See Cotzojay v. Holder*, 725 F.3d 172, 181 (2d Cir. 2013) ("The Fourth Amendment's protections apply to individuals [who are removable noncitizens], and these protections should be at their zenith in the home."); *see also Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1014, 1016 (9th Cir. 2008) (where INS agents entered the home of removable immigrants without a warrant, the only issue the government challenged was consent, effectively conceding that individuals had a reasonable expectation of privacy).

The circumstances of this case are different from the narrow instances in which courts have found a diminished expectation of privacy in the home. Individuals charged with or convicted of a crime have a reduced expectation of privacy in the home. *See, e.g.*, *United States v. Lucas*, 499 F.3d 769, 775-79 (8th Cir. 2007) (plurality opinion) (convicted inmate who escaped lawful custody); *Griffin v. Wisconsin*, 483 U.S. 868, 872–74 (1987) (probationer); *United States v. Weikert*, 504 F.3d 1, 8, 11–12 (1st Cir. 2007) (a probationer, parolee, or individual on supervised release); *Commey v. United States*, No. 11-cv-40164, 2012 WL 1856613, *5 (D. Mass. May 21, 2012) (civilly committed individuals who have been found not guilty by reason of insanity). Additionally, being forewarned about a government incursion into one's home can "significantly diminish[]" an otherwise reasonable expectation of privacy and thus render a warrantless search

20

reasonable. *See, e.g.*, *United States v. Knights*, 534 U.S. 112, 119–20 (2001) (probationer was "unambiguously informed of" a search condition in their probation order).

Such circumstances are not present here. Criminal prosecution is not a prerequisite to final orders of removal, nor does the Form I-205 process provide any warning to individuals that the government will be barging into their home at a particular time to make an arrest.

Another consideration is the extent of the intrusion. *Cf. United States v. Streifel*, 665 F.2d 414, 422 (2d Cir. 1981) (in context of an investigatory stop, "[i]n balancing the government's law enforcement interests it is generally true that the more intrusive the stop, the stronger the justification must be . . . ."). What courts consider a minimal inconvenience is not invasive enough to outweigh a strong government need for search or seizure, but a highly invasive action can tip the scales the other way. *Compare Weikert*, 504 F.3d at 14 (deeming a blood draw for a supervised releasee a "minimal inconvenience" and finding no Fourth Amendment violation), *with Blackburn v. Snow*, 771 F.2d 556, 563–65, 569 (1st Cir. 1985) (prison visitors have a diminished expectation of privacy, but a strip and cavity search is still not justified in all circumstances due to the invasive nature of such procedures). The intrusion at issue here—an unannounced and forced entry into the most sacred space, the home, to deprive an individual of their freedom—is of the highest degree. *See United States v. U.S. Dist. Ct. for E. Dist. of Mich.*, 407 U.S. 297, 313 (1972) ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed").

On the other side of the ledger, Plaintiffs acknowledge the government's "strong interest . . . in enforcing its federal immigration laws." Defs.' Br. at 28. But "[i]f the government's *general* interest were at issue, it would outweigh almost any individual interest and stretch fourth amendment protections wafer thin." *United States v. Berryman*, 717 F.2d 651, 659 (1st Cir. 1983) (emphasis added). Instead, the government's interest must be particularized to the seizure. *Id.*; *see*

21

*also City of Los Angeles v. Patel*, 576 U.S. 409, 420 (2015) (explaining that the government's "primary purpose" must be "distinguishable from the general interest in crime control" (citation modified)). Here, the government may assert an interest in the deportation of noncitizens with final orders of removal. But even described this way, there must still be "special needs" that "make the warrant and probable-cause requirement impracticable" in furtherance of that government interest. *Patel*, 576 U.S. at 420 (quoting *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 619 (1989)). Defendants identify no operational necessity explaining why longstanding surrender procedures or judicial warrants have suddenly become inadequate.

Defendants have not articulated a "special need" that justifies the extreme and unanticipated intrusion at issue here. *See* Defs.' Br. at 27–34. And the cases Defendants rely on are readily distinguishable. *See Griffin*, 483 U.S. at 872–74 (search did not violate the Fourth Amendment where officer believed a probationer's home contained contraband); *Wyman v. James*, 400 U.S. 309, 318–320, 326 (1971) (a home visit and search to ensure compliance with welfare rules did not violate the Fourth Amendment given the special need to protect children; limited nature of the intrusion, as prior notice was afforded the searched individual; and other factors).

Additionally, Defendants have a number of options that would protect the same governmental interest without encroaching on Fourth Amendment rights. For example, DHS could send individuals Form I-166s to begin the deportation process, as was traditionally done throughout the agency's history.[5] *See Singh v. Gonzales*, 494 F.3d 1170, 1172 n.3 (9th Cir. 2007) (this "order issues once the government determines that there is no further administrative relief available to an alien who is subject to an order of removal, and instructs the alien to appear at a

---

[5] Form I-166s are often called "bag-and-baggage letters." *See Silva-Rengifo v. Att'y Gen. of U.S.*, 473 F.3d 58, 60 (3d Cir. 2007) (using terms synonymously).

specified location and time for removal."); *Disposition Codes, Descriptions and Categories*, U.S. Customs & Border Protection (July 2024), https://www.cbp.gov/sites/default/files/2024-07/data_dictionary_redacted.pdf ("When an alien is issued a final order of removal a letter is sent to the alien telling them by what date they must leave the United States"); Memorandum from Acting Dir., ICE Off. of Det. and Removal Operations, to Field Off. Dirs. (Mar. 27, 2006), https://www.ice.gov/doclib/foia/dro_policy_memos/09684drofieldpolicymanual.pdf (instructing that for "Removals Ordered by the Immigration Judge," "if no bond is involved and no appeal has been filed," officers should "prepare Form I-205, Warrant of Removal; Form I-294, Warning to Alien Ordered Removed or Deported and Form I-166, Notice to Deportable Alien to Surrender.").

Many noncitizens with final removal orders have been living in the United States for years and nothing about their status has changed such that home invasions and seizures are suddenly necessary. Unlike the escaped inmate in *Lucas* or probationer in *Griffin*, individuals with final removal orders have not necessarily been convicted of any crime or pose a threat to the community. And for noncitizens who are suspected of criminal activity (for whom probable cause of a crime exists), the government can obtain a judicial warrant for their arrest. Indeed, some ICE officers are "obtaining judicial warrants based on probable cause of criminal offenses rather than relying on I-205[s] as directed by the [Lyons] Memo." Ex. 2 ¶ 13(f) (Schwank Decl.). This reality underscores the needlessness of the warrantless seizures the Lyons Memo purports to authorize. The immigration "regime would [not] be unduly disrupted by a requirement of probable cause" in these circumstances. *Griffin*, 483 U.S. at 878. Altogether, noncitizens' strong interest in privacy within the home, in conjunction with the unexpected, highly invasive nature of the seizure, outweighs the government's interest in deportation of individuals with final removal orders.

Despite this, Defendants contend that "administrative warrants have long been recognized

23

as permissible under the Fourth Amendment in the context of immigration, as well as others[,]" relying heavily on *Abel v. United States*. Defs.' Br. at 27–34 (citing 362 U.S. 217 (1960)). But as Plaintiffs explained in their opening brief, the Supreme Court expressly *declined* to consider whether an administrative warrant satisfied the Fourth Amendment's warrant requirement in *Abel*. Pls.' Br. at 14–15; 362 U.S. at 230. Defendants acknowledge this reality. Defs.' Br. at 29 (recognizing *Abel*'s discussion of administrative warrants is dicta). But they have no answer to the numerous post-*Abel* Supreme Court decisions confirming the insufficiency of administrative warrants. *See, e.g.*, *Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *Payton v. New York*, 445 U.S. 573 (1980); *see* Pls.' Br. at 15 (pointing out these cases). Instead, Defendants ignore these cases entirely. *See generally* Defs.' Br. Section II.B. The Fourth Amendment demands a judicial warrant even in this immigration enforcement context. Pls.' Br. at 15.[6]

For the same reasons, the Lyons Memo is not in accordance with DHS's own regulations, which require a judicial warrant for immigration arrests. *See* 8 C.F.R. § 287.8(c)(2)(ii). Defendants argue that the term "warrant" in 8 C.F.R. § 287.8(c)(2)(ii) encompasses administrative warrants but cite no binding authority in direct support of their proposition. *See* Defs.' Br. at 32–33. Defendants attempt to rely on *Sherman v. U.S. Parole Commission*, a Ninth Circuit decision interpreting a parole statute where the court held that the "warrant" at issue did not incorporate Fourth Amendment requirements. Defs.' Br. at 32 (citing 502 F.3d 869, 882–83 (9th Cir. 2007)). But in *Sherman*, the appeals court relied in part on the fact that parolees have a "unique status" as a "'prisoner' subject to the administrative 'retaking' by the warden already having legal custody over him." 502 F.3d at 878. As explained above, individuals with final removal orders have not

---

[6] Defendants have not identified—nor could Plaintiffs find—a single decision relying on *Abel*'s dicta that is binding on this Court. Thus, binding precedent demanding a judicial warrant applies.

24

necessarily been charged with any crime and thus have no blanket diminished expectation of privacy. And Plaintiffs have provided multiple authorities to support the idea that "warrant" in 8 C.F.R. § 287.8(c)(2)(ii) means a *judicial* warrant. Pls.' Br. at 18–19.

### C.    The Lyons Memo is a substantive rule because it alters rights and obligations, with the effect of law.

Defendants argue that the Lyons Memo is a procedural rule and thus not subject to notice-and-comment rulemaking. Defs.' Br. at 35. To the contrary, the Memo is a substantive rule that "creates rights, assigns duties, [and] imposes obligations" on numerous entities and individuals. *N.H. Hosp. Assoc. v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018) (citation modified).

Exemptions to the APA rulemaking process must be "narrowly construed and only reluctantly countenanced." *N.J. Dep't of Env't Prot. v. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980). "[N]ot all rules that might be categorized as procedural are exempted." *AFL-CIO v. NLRB*, 57 F.4th 1023, 1034 (D.C. Cir. 2023). An action does not fall within the procedural exemption if it "encodes a substantive value judgment or puts a stamp of approval or disapproval on a given type of behavior," *Nat'l Sec. Couns. v. C.I.A.*, 931 F. Supp. 2d 77, 107 (D.D.C. 2013) (citation modified); "alter[s] the rights or interests of parties, although it may alter the manner in which the parties present themselves . . . to the agency," *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980); "goes beyond formality and substantially affects the rights of those over whom the agency exercises authority," *Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107, 1113 (D.C. Cir. 1974); or "establish[es] standards of conduct or entitlement," *Aiken v. Obledo*, 442 F. Supp. 628, 649 (E.D. Cal. 1977).

The Lyons Memo does all of these things: it puts a stamp of approval on the use of Form I-205s to enter homes; alters the rights and interests of noncitizens subject to final orders of removal, ICE officers, and Plaintiffs; substantially affects the rights of noncitizens; and establishes

25

a new standard for ICE officers' conduct.

Defendants' contention that the Lyons Memo falls under the procedural exemption is unavailing. This "limited carveout" is "intended for internal house-keeping measures organizing agency activities." *AFL-CIO*, 57 F.4th at 1034 (citation modified). Although Defendants attempt to frame their policy change as a housekeeping measure that "merely reminds agents" of their choices of enforcement mechanisms, Defs.' Br. at 35, the Memo belies this claim. The Memo itself acknowledges that it sets forth a *new* enforcement mechanism agents can use to effectuate final removal orders. *See* Ex. 1 at 1 (Lyons Memo) (announcing a "recent[] determin[ation]"); Pls.' Br. ¶ 9 (SUMF) ("The Memo acknowledges that it marks a departure from prior practice") (admitted).

Defendants emphasize that a substantive rule is one that has the "force and effect of law." Defs.' Br. at 36 (quoting *Azar v. Allina Health Servs.*, 587 U.S. 566, 573 (2019)). *Azar* only serves to reinforce the Lyons Memo's status as a substantive rule. *See supra* Section I.B; *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 806 (D.C. Cir. 2006) (final agency action and substantive rule analyses "are alternative ways of viewing the [same] question").

And while Defendants admit that "taking a new position inconsistent with existing regulations demonstrate that a rule is substantive," they claim that Plaintiffs fail to point to any regulation with which the Memo is inconsistent. Defs.' Br. at 36 (citation modified). Not so: Plaintiffs explained why the Memo is inconsistent with 8 C.F.R. §§ 287.8(c)(2)(ii) and (f)(2). Pls.' Br. at 18–20. Plaintiffs have also shown that the Memo violates the Fourth Amendment and longstanding agency policy, including training materials and standard operating procedures. *Id.* at 10–17; Ex. 2 ¶¶ 8–9 (Schwank Decl.); *supra* Sections I.B, II.B.

## III.    The Court cannot rule on Count III at the motion to dismiss stage.

Defendants move to dismiss Plaintiffs' claim that the Lyons Memo violates the APA as arbitrary and capricious. Defs.' Br. at 34–35. However, it is inappropriate for the Court to dismiss

this claim at this stage, as it turns on the administrative record, which Plaintiffs have not yet obtained.[7] *See Atieh*, 727 F.3d at 76–77. This record will reveal whether the agency considered reliance interests, longstanding agency practice, or less intrusive alternatives. "When reviewing an agency's decision under the arbitrary and capricious standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Housatonic River Initiative v. U.S. EPA, New Eng. Region*, 75 F.4th 248, 278 (1st Cir. 2023) (citation modified); *see also Dep't of Comm. v. New York*, 588 U.S. 752, 780 (2019) (review of whether agency action was arbitrary and capricious is "ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative records").

Defendants argue that Former Acting Director of ICE, Todd M. Lyons, made a reasoned decision in issuing the Lyons Memo that satisfies the arbitrary-and-capricious standard. Defs.' Br. at 34. But Defendants have yet to prove this contention: Defendants have not produced the record that will either confirm or contradict this claim. *See Ohio v. EPA*, 603 U.S. 279, 292 (2024) (standard requires assessing if action is "not reasonable or reasonably explained" (citation modified)). Plaintiffs have adequately alleged that Defendants' decision was arbitrary and capricious, and this claim is not suited to resolution at this juncture. *See* Am. Compl. ¶¶ 112–18.

## IV.    If the Court does not grant summary judgment, a preliminary stay is appropriate.

Defendants offer no credible arguments in response to Plaintiffs' alternative request for a preliminary stay under 5 U.S.C. § 705.

---

[7] Generally speaking, "the plausibility standard does not apply to a complaint for judicial review of final agency action" because "[t]he focal point of APA review is the existing administrative record." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). However, this does not apply "where the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)." *Id.* at 76 n.4. For this reason, Plaintiffs can move for summary judgment, and Defendants can move for dismissal of Counts I, II, and IV.

*Success on the merits.* For the reasons above and in their opening brief, Plaintiffs are likely to succeed on the merits of at least one of their claims. *See supra* Section II; Pls.' Br. at 5–24.

*Irreparable harm.* Defendants argue that: (1) Plaintiffs' harm is not cognizable under *Alliance*, and (2) money damages can remedy this harm. Defs.' Br. at 37. First, for the reasons articulated above, Plaintiffs' harm is cognizable under *Alliance* and subsequent caselaw. *See supra* Section I.A.1. Second, Defendants overlook the fact that money damages are not recoverable in an APA action. *See Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 496 F. Supp. 3d 600, 611 (D. Mass. 2020); Pls.' Br. at 26 (citing additional cases). And even if such damages were available, Defendants fail to address and overcome the authority holding that damages cannot fully compensate reputational harm or impairment of an organization's activities. *Id.* at 26, 33.

*Balance of the equities and public interest*. Defendants' sole argument on this element appears to be that granting a preliminary stay would "hamstring immigration enforcement." Defs.' Br. at 37–38. This Court has repeatedly rejected this argument. *See, e.g.*, *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 313 (D. Mass. 2025); *see also* Pls.' Br. at 34–35. Additionally, this argument is in direct conflict with Defendants' mootness argument. When attempting to dismiss the lawsuit, Defendants claim it is moot because they have temporarily paused the Lyons Memo. *See* Defs.' Br. at 23. But when opposing the requested stay, Defendants argue the policy cannot be stopped because doing so would harm their activities. Defendants can't have it both ways: at least one—if not both—of these arguments is pretextual.

## V.    The Court may set aside the Lyons Memo and grant declaratory judgment.

Finally, Defendants argue that the Supreme Court's decision in *Trump v. CASA, Inc.* prevents this Court from setting aside the Lyons Memo because relief must be limited to the three Plaintiffs only. Defs.' Br. at 39–40 (citing 606 U.S. 831 (2025)). Not so. *CASA*'s ruling limiting nationwide injunctions did not apply to vacatur under the APA. 606 U.S. at 847 n.10 ("Nothing

28

we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action."); *see also Louisiana ex rel. Murrill v. FDA*, 175 F.4th 310, 323 (5th Cir. 2026) (*CASA* was not addressing "remedies under the APA"); *id.* at 323 n.10 ("Nothing in the text of Section 705, nor of Section 706, suggests that either preliminary or ultimate relief under the APA needs to be limited to parties." (citation modified)). Although nationwide injunctions are typically "permissible only if Congress authorized them," the APA has been and continues to be different, as "Congress did in fact depart from that baseline and authorize vacatur." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 838 (2024) (Kavanaugh, J., concurring); *see also id.* at 826 ("The Federal Government and the federal courts have long understood § 706(2) to authorize vacatur of unlawful agency rules, including in suits by unregulated plaintiffs who are adversely affected by an agency's regulation of others."). Thus, such relief is appropriate here. *See Pablo Sequen v. Albarran*, No. 25-cv-6487, 2026 WL 1805114, *37–41 (N.D. Cal. June 23, 2026) (rejecting government's argument that the court should "enjoin the enforcement of the challenged policies only against members of the [plaintiff] classes," and explaining that *CASA* "says nothing that calls into question the longstanding practice of vacating agency action under the APA"); *Illinois v. Noem*, 813 F. Supp. 3d 282, 309–10 (D.R.I. 2025) (rejecting, post-*CASA*, defendants' argument that "the Court should only grant [vacatur under the APA] in a way that applies only to Plaintiffs"); *see also Nat'l TPS All. v. Noem*, 166 F.4th 739, 767–68 (9th Cir. 2026) (post-*CASA* grant of "universal vacatur extending to non-parties").

Defendants argue that rather than vacate the Lyons Memo in its entirety, the Court must tailor any relief granted "to the injuries of 'each plaintiff with standing to sue.'" Defs.' Br. at 39 (quoting *CASA*, 606 U.S. at 860). But again, "[n]othing in *CASA* provides that, as a categorical matter, it is improper for a district court to impose an injunction of such breadth if it is necessary

29

to do so to provide the plaintiff with complete relief." *Doe v. Trump,* 157 F.4th 36, 80–81 (1st Cir. 2025) (citing *CASA*, 606 U.S. at 853–54). Further, Defendants offer no suggestion as to how the Court might set aside the Lyons Memo for the named Plaintiffs only. "It is all but impossible for courts to craft relief that is complete *and* benefits only the named plaintiffs" in APA cases. *Nat'l TPS All.*, 166 F.4th at 767 (citation modified); *see also Pablo Sequen*, 2026 WL 1805114 at *40 ("[T]he government's proposal would effectively require the Court to rewrite the policies, which by their own terms apply nationwide, to cover only [the plaintiffs]. Rewriting a deficient policy is the agency's role, not the Court's."). That is true here, as "Plaintiffs do not simply challenge the application of the [Lyons Memo's practices] to them, they challenge [Defendants'] very authority to act." *Nat'l TPS All.*, 166 F.4th at 767. Accordingly, the proper remedy here is to set aside the Lyons Memo as a whole.

Finally, Defendants assert that Plaintiffs are not entitled to declaratory relief because they are not entitled to injunctive relief. Defs.' Br. at 38–39. But because Plaintiffs are entitled to vacatur under the APA, they are entitled to declaratory judgment. As a sister court in this Circuit explained, "declaratory relief provides the legal determination, and vacatur is the logical consequence of that determination. They are two sides of the same coin." *Illinois*, 813 F. Supp. 3d at 309 (quoting *Illinois v. FEMA*, 801 F. Supp. 3d 75, 96–97 (D.R.I 2025)).

## CONCLUSION

Plaintiffs respectfully ask the Court to enter partial summary judgment on Counts I, II, and IV, or in the alternative, to stay the Lyons Memo under 5 U.S.C. § 705.

Dated: July 24, 2026

Respectfully submitted,

LAWYERS FOR CIVIL RIGHTS

By: */s/ Brooke Simone*
Brooke Simone (BBO #718168)

Jillian Lenson (BBO #690653)
Iván Espinoza-Madrigal (BBO #708080)
61 Batterymarch Street, 5th Floor
Boston, MA 02210
Telephone: (617) 482-1145
bsimone@lawyersforcivilrights.org
jlenson@lawyersforcivilrights.org
iespinoza@lawyersforcivilrights.org


HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Hannah W. Brennan*
Hannah W. Brennan (BBO #688179)
Thomas M. Sobol (BBO #471770)
Michael H. Lavine (BBO #717587)
Chris O'Brien (BBO #703767)
One Faneuil Hall Square, 5th Floor
Boston, MA 02109
(617) 482-3700
hannahb@hbsslaw.com
tom@hbsslaw.com
michael.lavine@hbsslaw.com
chrisob@hbsslaw.com

31

## CERTIFICATE OF SERVICE

I, Hannah W. Brennan, hereby certify that on July 24, 2026, the above-captioned document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/ *Hannah W. Brennan*
Hannah W. Brennan

32