**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

GREATER BOSTON LATINO NETWORK,
BRAZILIAN WORKER CENTER, INC., *et al.*,

  *Plaintiffs*,

      *v.*

MARKWAYNE MULLIN, in his official capacity as
Secretary of Homeland Security,[1] *et al.*,

  *Defendants*.

No. 1:26-cv-10472-JEK

**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

[1] The Complaint names as a Defendant Kristi Noem in her official capacity as then-Secretary of Homeland Security. Under Federal Rule of Civil Procedure 25(d), Markwayne Mullin, current Secretary of Homeland Security, is automatically substituted as a Defendant.

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.    Plaintiffs' Opposition Confirms There Is No Article III Jurisdiction. ............................... 2

    A.    No Plaintiff Has Article III Standing. .................................................. 2

        1.    Plaintiffs' alleged injuries are insufficient as a matter of law............. 3

        2.    Plaintiffs have not alleged that the Lyons Guidance caused any alleged injury. ................................................................................. 8

        3.    Plaintiffs have failed to allege redressability..................................... 9

    B.    The Lyons Guidance Is Not Final Agency Action. ......................................... 10

    C.    The Case Is Moot. ......................................................................... 13

II.   Plaintiffs Fail to Allege Any Claim Relating to the Lyons Guidance ............................... 14

    A.    Plaintiffs Have Not, and Cannot, Demonstrate that They May Assert the Fourth Amendment Rights of Third Parties. ................................ 14

    B.    The Fourth Amendment Allows Administrative Warrants to Be Used in the Manner Described by the Lyons Guidance. ........................................ 16

    C.    The Lyons Guidance Is a Procedural Rule, so Notice-and-Comment Rulemaking Is Unnecessary. .......................................................... 19

III.  The Court Should Dismiss Count III. ............................................................... 20

CONCLUSION................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Cases**

*Abel v. United States,*
  362 U.S. 217 (1960) ................................................................................... 4, 17, 18

*ACLU of Mass. v. U.S. Conf. of Cath. Bishops*,
  705 F.3d 44 (1st Cir. 2013) ................................................................................. 13

*AFL-CIO v. NLRB*, 57 F.4th 1023,
  57 F.4th 1023 (D.C. Cir. 2023) ........................................................................... 19

*Am. Academy of Pediatrics v. Kennedy*,
  823 F. Supp. 3d 141 (D. Mass. 2026) ............................................................ 12, 13

*Am. Hosp. Ass'n v. Bowen*,
  834 F.2d 1037 (D.C. Cir. 1987) .......................................................................... 19

*Appalachian Power Co. v. EPA*,
  208 F.3d 1015 (D.C. Cir. 2000) .......................................................................... 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 20

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................................ 11

*City of El Cenizo v. Texas*,
  890 F.3d 164 (5th Cir. 2018) .............................................................................. 17

*Community Economic Development Center of Southeastern Mass. v. Bessent*,
  818 F. Supp. 3d 228 (D. Mass. 2026) ................................................................ 6, 7

*Coolidge v. New Hampshire*,
  403 U.S. 443 (1971) ............................................................................................ 18

*Doe v. Trump*,
  No. 1:25-cv-13946, 2026 WL 1170971 (D. Mass. Apr. 30, 2026) ..................... 11

*Dorcas International Institute of Rhode Island v. USCIS*,
  No. 26-cv-132, 2026 WL 1622708 (D.R.I. June 5, 2026) ................................. 9, 11

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021) ............................................................................................ 20

*FDA v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024) .................................................................................... *passim*

*Federal Defenders of San Diego, Inc. v. U.S. Sentencing Commission*,
    680 F. Supp. 26 (D.D.C. 1988) ................................................................................. 7

*Feitoza v. Noem*,
    No. 4:26-CV-40011-MRG, 2026 WL 252422 (D. Mass. Jan. 30, 2026) ................................. 13

*Griffin v. Wisconsin*,
    483 U.S. 868 (1987)................................................................................................ 17

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)................................................................................................. 3

*McMahon v. New York*,
    145 S. Ct. 2643 (Mem.) ........................................................................................... 7

*N.H. Hosp. Ass'n v. Azar*,
    887 F.3d 62 (1st Cir. 2018) ............................................................................... 19, 20

*Nat'l Ass'n of Home Builders v. Norton*,
    415 F.3d 8 (D.C. Cir. 2005) .................................................................... 10, 11, 12, 15

*New England Synod v. DHS*,
    824 F. Supp. 3d 118 (D. Mass. 2026)................................................................... 12, 13

*Payton v. New York*,
    445 U.S. 573 (1980)............................................................................................... 18

*Philadelphia Yearly Meeting of Religious Society of Friends v. DHS*,
    No. CV 25-0243-TDC, 2026 WL 280089 (D. Md. Feb. 3, 2026) ........................................ 13

*Presidents' Alliance on Higher Education and Immigration v. Noem*,
    824 F. Supp. 3d 168 (D. Mass. 2026) ................................................................... 5, 13

*Princeton Univ. v. Schmid*,
    455 U.S. 100 (1982)................................................................................................ 9

*Rakas v. Illinois*,
    439 U.S. 128 (1978)...................................................................................... 1, 14, 16

*Skinner v. Ry. Lab. Execs.' Ass'n*,
    489 U.S. 602 (1989)............................................................................................... 17

*Three Lower Ctys. Cmty. Health Servs. Inc. v. DHHS*,
    517 F. Supp. 2d 431 (D.D.C. 2007)*,
    aff'd*, 317 F. App'x 1 (D.C. Cir. 2009) ...................................................................... 15

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016).......................................................................................... 10, 11

*United States v. Knights*,
534 U.S. 112 (2001) .......................................................................................... 17

*United States v. Lucas*,
499 F.3d 769 (8th Cir. 2007) ........................................................................... 17

*United States v. Texas*,
599 U.S. 670 (2023) ............................................................................................ 9

*Victim Rights Law Center v. Department of Education*,
788 F. Supp. 3d 70 (D. Mass. 2025) ....................................................... 7, 9

*Victim Rts. L. Ctr. v. Dep't of Educ.*,
154 F.4th 5 (1st Cir. 2025). ............................................................. 7, 10, 12

**U.S. Constitution**

U.S. Const. amend IV ........................................................................... *passim*

U.S. Const. art. III .................................................................................. *passim*

**Statutes**

5 U.S.C. § 704.......................................................................................... 20

8 U.S.C. § 1101 *et seq.*........................................................................... 18

8 U.S.C. § 1226(a) ................................................................................... 18

**Regulations**

8 C.F.R. § 287.8 ....................................................................................... 20

**Other Authorities**

"Directive," Cambridge Dictionary

https://dictionary.cambridge.org/us/dictionary/english/directive ............................................. 20

**INTRODUCTION**

Plaintiffs are Massachusetts-based nonprofit advocacy organizations who seek to vindicate their view of the Fourth Amendment to prevent the use of an immigration enforcement practice that does not apply to them and that they do not allege was ever used in Massachusetts. The challenged practice, outlined in an ICE guidance document that was circulated internally (the "Lyons Guidance"), allows arrests inside the homes of aliens who have been ordered removed from the country. Plaintiffs are not aliens and concede that there is no associational standing based on injuries to aliens.

That alone should decide this case. The Court should dismiss the case because Plaintiffs do not allege Article III standing or explain why they can assert the Fourth Amendment rights of others. The types of injuries they allege are foreclosed by the Supreme Court's decision in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024); efforts to manufacture standing through spending money and claiming confusion about the requirements of the law are insufficient to demonstrate an Article III injury. Plaintiffs also do not explain how the Lyons Guidance—which was apparently in effect for eight months before Plaintiffs knew about it—caused their injuries or why a court order will redress those injuries. Notably, Plaintiffs do not even try to explain why they can assert others' Fourth Amendment rights; they cannot under *Rakas v. Illinois*, 439 U.S. 128 (1978). Plaintiffs' only response is to summarily argue that their case is an APA one. But the APA merely supplies a cause of action to assert constitutional claims; the substantive basis for Plaintiffs' APA claim is that the Lyons Guidance violates the Fourth Amendment, making it a Fourth Amendment case. The Court can thus dismiss the case entirely on these two bases alone.

The Court can also dismiss the case for other independent reasons, namely, there is no final agency action because no one's rights have been conclusively decided and nothing removed officer discretion over future decisionmaking the case is moot because the practice is not being

1

implemented; and the practice implemented by the Lyons Guidance comports with the Fourth Amendment under the special needs doctrine. Further, no notice-and-comment rulemaking was required for Defendants to implement internal guidance interpreting the scope of its legal authority. And Plaintiffs' argument about why its arbitrary-and-capricious claim cannot be dismissed is meritless because there are no facts alleged that Defendants acted arbitrarily or capriciously.

**ARGUMENT**

**I.      Plaintiffs' Opposition Confirms There Is No Article III Jurisdiction.**

  **A.      No Plaintiff Has Article III Standing.**

Plaintiffs concede that there is no associational standing. *See* Opp. at 2 ("Plaintiffs are not asserting associational standing.").[2] Thus, they must demonstrate organizational standing, which is a high hurdle after the Supreme Court's decision in *Alliance*. There, the Court reaffirmed that Article III standing ensures that a "plaintiff possess[es] a personal stake" so that "courts do not opine on legal issues in response to citizens who might roam the country in search of governmental wrongdoing." 602 U.S. at 379 (citation omitted). Organizational plaintiffs asserting standing "must satisfy the usual standards for injury in fact, causation, and redressability." *Id.* at 393-94.

Plaintiffs are Massachusetts-based advocacy nonprofits, whose allegations focus on out-of-state implementation of the Lyons Guidance. Am. Compl. ¶¶ 71-73. They do not even allege that the practice outlined in the Lyons Guidance has been used to make any home arrest in Massachusetts, *see* Opp. at 2; *see also* ECF No. 31 at 7, ¶ 6 (noting that the Lyons Guidance was fully implemented in Minnesota, Louisiana, and Texas only). Accordingly, they have not demonstrated a sufficiently personal stake to establish this Court has jurisdiction.

---

[2] Plaintiffs' Consolidated Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiffs' Motion for Summary Judgment or, in the Alternative, Motion for Stay (ECF No. 32) is referred to as the "Opp." or "Opposition."

### 1.    Plaintiffs' alleged injuries are insufficient as a matter of law.

Plaintiffs argue that they have sufficiently alleged two injuries in fact: (1) a direct impairment to their core activities providing counseling, training, and education about the Fourth Amendment's requirements, which also diverts time and money from other core activities, Opp. at 4-5; and (2) a reputational injury because the Lyons Guidance "contradicts [Plaintiffs'] longstanding advice and previous trainings" about what is constitutional under the Fourth Amendment. *Id.* at 8. Neither suffices as an injury in fact under *Alliance*, as those alleged injuries are mere variants of the types of injuries the Supreme Court foreclosed.

1. To demonstrate injury in fact, an organization must allege a "concrete and demonstrable injury to the organization's activities" that is "far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). The organization must establish that the defendant's challenged action "directly affected and interfered with [the organization's] core business activities." *Alliance*, 602 U.S. at 394-95.

*Alliance* makes clear that the injury-in-fact requirement "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." 602 U.S. at 381. In *Havens*, an organization providing housing counseling services was deprived of information to which it had a statutory *right* when the owner of apartment complexes provided false information about housing availability directly to the organization's employees. 455 U.S. at 368, 373. *Alliance* clarified that the organization in *Havens* had standing to sue because the apartment owner's act of giving false housing information to the organization, on which the organization relied to provide its services, "directly affected and interfered with [the organization's] core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Alliance*, 602 U.S. at 395. The Supreme Court rejected an

expansive reading of *Havens* supporting standing merely because a defendant's actions "impaired" an organization's "ability to provide services and achieve [its] organizational mission[]," even if the organization "divert[ed] its resources in response to [the] defendant's actions." *Id.* at 394-95 (citation omitted).

Both of Plaintiffs' alleged injuries are like the ones rejected by *Alliance*. First, Plaintiffs argue that—despite *Abel v. United States,* 362 U.S. 217 (1960), being decided in 1960—the Lyons Guidance affects the "core activity" of "provid[ing] reliable Fourth Amendment counseling and training" and "requires them to re-work their Know-Your-Rights trainings and associated educational materials, conduct new trainings for both staff and community members, and respond to the surge of urgent requests for counseling." Opp. at 4-5. But Plaintiffs never explain how the Lyons Guidance "directly affect[s] and interfere[s]" with these alleged core business activities. *See Alliance*, 602 U.S. at 395. At most, the Lyons Guidance may influence the substance of the advice that Plaintiffs provide, but that is true anytime there is a change in Fourth Amendment law— allowing Article III standing for such plaintiffs to challenge the policies they dislike while leaving any they like intact is exactly like the expenditures used to gather information and advocate against the government's actions that the Supreme Court found insufficient in *Alliance*. *See id.* Thus, the provision of counseling, training, and educational materials cannot support Article III standing, lest organizations gain universal standing to "challenge almost every federal policy that they dislike." *Alliance*, 602 U.S. at 395.

Second, Plaintiffs argue that the Lyons Guidance "threatens [their] credibility and reputations within the communities they serve." Opp. at 8. But instead of explaining how they have a direct and concrete reputational harm from the Lyons Guidance, *see* ECF No. 31 at 15-16,

4

Plaintiffs skim over this point and summarily argue that their reputations are harmed because Plaintiffs say so. Opp. at 8. Such *ipse dixit* does not demonstrate an injury.

2. The cases Plaintiffs cite to support an injury in fact are of no help because none addresses *Alliance*'s statement that *Havens* is an "unusual case" that should not be "extend[ed] . . . beyond its context," 602 U.S. at 396, and all involve a closer nexus to the challenged conduct between the plaintiff's harm and the agency's alleged action than what Plaintiffs present here. For example, Plaintiffs rely on *Presidents' Alliance on Higher Education and Immigration v. Noem*, 824 F. Supp. 3d 168 (D. Mass. 2026), to argue that *Alliance*'s holding extends to only when an organization diverts resources relating to "advocacy or lobbying" instead of to any other activities. *See* Opp. at 5. But *Alliance* is not so limited, as the Supreme Court said it was "incorrect" that "standing exists when an organization diverts its resources in response to a defendant's actions." 602 U.S. at 395. And the clear import of its holding is that an organization cannot spend money to manufacture standing. *See id.* ("An organization cannot manufacture its own standing" by "expending money to gather information and advocate against the defendant's action."). Article III standing will not exist unless there is the type of direct harm on a core business activity that matches the type of harm alleged in the "unusual case" of *Havens*, where plaintiffs had a statutory right to certain information. *See id.* at 396. There is nothing of the sort here; Plaintiffs have no right to anything from Defendants.

Plaintiffs' declarations reinforce that no injury is alleged here. They do not speak to the type of diversion of time and money recognized to be sufficient in other cases. GBLN's diversion involved "redirect[ing]" its "classroom discussions" to speak about the Lyons Guidance. ECF No 27, Ex. 3 ¶ 29 (GBLN Decl.). BWC's alleged diversion involved working on counseling clients instead of providing certain programming or assistance with citizenship applications. ECF No 27,

Ex. 4 ¶¶ 39-42 (BWC Decl.). And MCAN's "affiliates"—not MCAN itself—have expanded some trainings while decreasing others. ECF No 27, Ex. 5 ¶¶ 28, 32-34 (MCAN Decl.). The declarations also do not support Plaintiffs' statement that any "surge" in calls has occurred, *see* Opp. at 5, as (1) GBLN does not discuss receiving any calls, *see* Ex. 3 ¶¶ 24-27(GBLN Decl.); (2) BWC says only that "when people call the BWC to ask questions," those calls now require "a much more detailed, lengthier explanation" and are "more time-intensive," with no explanation about the frequency of those calls and whether they have increased, *see* Ex. 4 ¶¶ 29-32 (BWC Decl.); and (3) MCAN says that one "affiliate[] . . . receive[s] frequent calls from individuals saying that ICE is at their door," without discussing whether there has been any meaningful difference in the number of the calls since the Lyons Guidance was issued. Ex. 5 ¶ 23 (MCAN Decl.). In short, Plaintiffs are advocacy organizations and they do not suffer a cognizable Article III injury simply because they responded to the Lyons Guidance by doing the very thing they were formed to do.

Likewise, Plaintiffs cite to inapposite cases to support their alleged counseling-interference and reputational injuries. Plaintiffs rely on *Community Economic Development Center of Southeastern Massachusetts v. Bessent*, 818 F. Supp. 3d 228 (D. Mass. 2026), *appeal filed*, No. 26-1329 (1st Cir. Apr. 6, 2026), for the proposition that there is an injury in fact if "the challenged action risks harming its reputation or credibility." Opp. at 4. But *Bessent* does not cite *Alliance* at all, and— even assuming it was correctly decided, as it is currently on appeal—the harm alleged was that plaintiff organizations could not encourage their "members" to file tax returns because doing so could lead to the disclosure of the members' confidential information. 818 F. Supp. 3d at 247. Those organizations were put into a bind because they could neither advise persons to file tax returns because of that risk nor advise them not to file a tax return because that would violate

federal law; thus, their counseling services were directly affected, and their funding also allegedly suffered due to lower numbers of people filing. *Id.*

Similarly, Plaintiffs cite *Victim Rights Law Center v. Department of Education*, 788 F. Supp. 3d 70 (D. Mass. 2025). *See* Opp. at 8. The First Circuit stayed the district court's preliminary injunction opinion pending appeal because it "involve[d] an identical challenged agency action and similar relief" as to what the Supreme Court stayed in a separate case. *See Victim Rts. L. Ctr. v. Dep't of Educ.*, 154 F.4th 5, 10 (1st Cir. 2025) (citing *McMahon v. New York*, 145 S. Ct. 2643 (Mem.) (2025)), *appeal dismissed by* 2026 WL 374364 (1st Cir. Jan. 15, 2026). But even if the opinion were in effect, there, a nonprofit organization alleged that it was directly affected by a reduction in force ("RIF") at the Department of Education's Office of Civil Rights ("OCR") because the decrease in staffing at OCR decreased the number of investigations of discrimination complaints. *Victim Rights L. Ctr.,* 788 F. Supp. 3d at 81-82. The court stated that this decrease affected the organization because "the OCR process provides the only viable way to obtain relief for many of [the organization's] clients," so the organization could not "seek recourse for many victims," also resulting in "turn[ing] away so many students who seek [the organization's] help." *Id.* at 82, 84 (citation omitted). Plaintiffs make no similar allegations; they can still accurately relay information to their clients without impediment, and nothing affects any processes available to Plaintiffs to seek recourse. Simply put, Plaintiffs' reputations are not damaged by providing legal advice in the same way as any other update relating to law or policy. Instead, as Defendants argued, ECF No. 31 at 15, Plaintiffs' alleged injuries are more like the ones found to be insufficient in *Federal Defenders of San Diego, Inc. v. U.S. Sentencing Commission*, 680 F. Supp. 26 (D.D.C. 1988), because Plaintiffs can continue to provide their clients with information. *See id.* at 28.

Finally, Plaintiffs introduce a red herring by arguing that Medicaid and FAFSA applications are somehow affected because some "community members are reluctant to submit their addresses to the federal government." Opp. at 5. But the Lyons Guidance applies only to aliens who have received final orders of removal, *see* ECF No. 27, Ex. 1 ("Lyons Guidance") at 1, so it is unclear why these alleged speculative fears relate to the Lyons Guidance at all.

### 2. Plaintiffs have not alleged that the Lyons Guidance caused any alleged injury.

Plaintiffs argue that the Lyons Guidance caused their injuries because it rendered their "existing Fourth Amendment guidance, trainings, and educational materials obsolete" and "change[d] the advice Plaintiffs can responsibly provide to their communities." Opp. at 9. That "chain of causation is simply too attenuated," as Plaintiffs' argument "would be an unprecedented and limitless approach" allowing anyone who provides voluntary counseling, training, guidance, or educational materials to be able to sue whenever there is a legal development that they dislike. *See Alliance*, 602 U.S. at 391-92. The Supreme Court stated that similar views of causation would lead to "no principled way to cabin" Article III standing as "[f]irefighters could sue to object to relaxed building codes that increase fire risks," "[p]olice officers could sue to challenge a government decision to legalize certain activities that are associated with increased crime," and "[t]eachers in border states could sue to challenge allegedly lax immigration policies that lead to overcrowded classrooms." *Id.* at 392. Plaintiffs' argument is no different: anyone who provides a counseling or educational service can sue whenever the materials need an update. That goes against the Supreme Court's caution that "[t]he causation requirement . . . rules out attenuated links"— those "where the government action is so far removed from its distant (even if predictable) ripple effects," *id.* at 383—to prevent courts from becoming "virtually continuing monitors of the wisdom and soundness of government action." *Id.* at 383-84 (citation omitted).

8

In response, Plaintiffs summarily argue that a "foreseeable result[] of policy changes like this one" includes "spending money to update training materials [and] diverting resources." Opp. at 9. But the cases they rely on had closer chains of causation than what Plaintiffs have presented here. As discussed above, *Victim Rights Law Center* does not help Plaintiffs because there, the organization alleged that OCR's RIF directly affected their ability to work for their clients. Specifically, the organization "d[id] not have the capacity to take most cases to litigation, [making] the OCR process [] the only viable way to obtain relief for many of its clients," so the decrease in OCR investigations caused the organization to divert its resources to other procedures to seek relief. *See* 788 F. Supp. 3d at 82, 85. Similarly, in *Dorcas International Institute of Rhode Island v. USCIS*, No. 26-cv-132, 2026 WL 1622708 (D.R.I. June 5, 2026), *appeal filed*, No. 26-1703 (1st Cir. June 12, 2026), the challenged policies at issue allegedly caused the organizations to "incur[] a backlog of cases that cannot reach final adjudications." *Id.* at *30-31. Plaintiffs here do not make similar allegations explaining how there is "a predictable chain of events leading from the government action" to their injuries. *Alliance*, 602 U.S. at 385.

### 3. Plaintiffs have failed to allege redressability.

Plaintiffs argue that their injuries are redressable for four reasons. All fail. Plaintiffs cannot demonstrate that their alleged injuries are "redressable by a court order," *i.e.*, "the asserted injury is traditionally redressable in federal court." *United States v. Texas*, 599 U.S. 670, 676 (2023).

*First*, Plaintiffs argue that vacating the Lyons Guidance would "clarify the Fourth Amendment's bounds" so they can "provide reliable counsel to community members." Opp. at 10. But that is nothing more than an invitation to provide an advisory opinion. It is hornbook law that courts cannot issue "advisory opinions on abstract questions of law." *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (citation omitted).

9

*Second*, Plaintiffs argue that vacating the Lyons Guidance would "obviate the need for new trainings and materials and reduce the surge in inquiries." Opp. at 10. But that is not at all clear, as Plaintiffs have not explained why the Lyons Guidance alone controls whether any trainings or materials will need to be updated given that immigration law continues to develop. As discussed above, it is far from clear there has been any "surge in inquiries," *see supra* at 6, so it is speculative that vacating the Lyons Guidance will affect the number of inquiries that Plaintiffs receive.

*Third*, Plaintiffs argue that vacating the Lyons Guidance would "reduce the fear of home addresses being shared with the government, such that Plaintiffs could re-engage in Medicaid and FAFSA counseling work." Opp. at 10. But that has nothing to do with the Lyons Guidance, which applies only to "aliens subject to a final order of removal [] in their place of residence." Lyons Guidance at 1. Unreasonable fears of "home invasions" will not be redressed by a court order.

*Fourth*, Plaintiffs argue that vacating the Lyons Guidance would "vindicate Plaintiffs' prior Fourth Amendment guidance and ensure newly offered advice is accurate." Opp. at 10. Once again, this asks for an advisory opinion for this Court to "vindicate" Plaintiffs' views of the law, and it is unclear how vacating the Lyons Guidance will ensure that Plaintiffs provide accurate advice.

**B.      The Lyons Guidance Is Not Final Agency Action.**

The Lyons Guidance is not a final agency action because it does not determine anyone's rights or obligations, and no legal consequences flow from it. *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016). Plaintiffs do not argue that any person's rights or obligations are determined by the Lyons Guidance, instead arguing that it has three "important and concrete legal consequences." Opp. at 12.

To demonstrate that legal consequences flow from an agency decision, a plaintiff must demonstrate that the alleged action definitively affects a party's legal obligations. *See Nat'l Ass'n*

10

*of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) (When there is no "certain change in the legal obligations of a party, the action is non-final for the purpose of judicial review."). That can be demonstrated by showing the decision binds the agency and removes its discretion. *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (stating that a base closure recommendation "was not 'final agency action' followed from the fact that the recommendations were in no way binding on the President, who had absolute discretion to accept or reject them" (citation omitted)). Or it can be demonstrated by showing "for all practical purposes" that the agency "has ruled definitively" that a certain action will be taken against a specific person. *See Hawkes Co.*, 578 U.S. at 597-98 (holding that a determination, made by an agency on a case-by-case basis, that a property contained "waters of the United States" was a final agency action).

Here, none of Plaintiffs' proffered legal consequences demonstrate that Defendants' discretion has been constrained or that any decision has been made to any specific person. *First*, Plaintiffs argue that the Lyons Guidance "alters [aliens'] rights" because "ICE officers . . . *may* subject immigrants to" arrests pursuant to an administrative warrant. Opp. at 12 (emphasis added). But that is not a legal consequence because there is nothing "binding" limiting officers' discretion regarding the use of administrative warrants. *See Norton*, 415 F.3d at 16-17 (no final agency action when a guidance document did not contain binding language).

*Second*, Plaintiffs argue that the Lyons Guidance "has direct legal consequences for ICE officers, as it redefines the scope of their authority." Opp. at 13. But the scope of authority does not matter as long as officers continue to retain discretion about when to act. *See* ECF No. 31 at 22 (collecting cases). Plaintiffs cite this Court's decision in *Doe v. Trump*, No. 1:25-cv-13946, 2026 WL 1170971 (D. Mass. Apr. 30, 2026), but *Doe* is of no help to Plaintiffs because there, the government conceded that the alleged policy cabined employees' discretion. *See id.* at *7 ("The

11

government does not dispute that USCIS employees are prohibited from issuing final decisions on benefit applications under both Policy Memoranda."). No such limitation exists here.

*Third*, Plaintiffs argue that the Lyons Guidance "impact[s] [] Plaintiffs' day-to-day business operations" and state that they are "inundated with calls for help." Opp. at 14. As discussed above, it is questionable whether Plaintiffs are receiving many "calls for help," *see supra* at 6, but regardless, this type of effect has nothing to do with whether a final agency action exists—the question is whether there are any direct "legal consequences" on any party, not any sort of tangential effect, so this too does not demonstrate that a final agency action exists. *See New England Synod v. DHS*, 824 F. Supp. 3d 118, 162-63 (D. Mass. 2026) (finding DHS guidance memo regarding immigration enforcement at places of worship was not final agency action).

Plaintiffs admit that the "Lyons [Guidance] does not *require* ICE officers to use Form I-205s to enter homes." Opp. at 14. Despite that, Plaintiffs argue that the Lyons Guidance is a final agency action because "a policy can have legal consequences . . . even where it institutes a directive that does not *require* action." *Id.* at 14-15. But that argument is wrong. The Lyons Guidance is not a "directive"—it is not "an official instruction or order," *see Directive*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/directive, as it does not require any officer to do anything. And the non-precedential cases cited by Plaintiffs do not support Plaintiffs' arguments as those cases still demonstrate some express direction to perform a certain way under specific circumstances that affected someone's legal rights. In *Appalachian Power Co. v. EPA*, the D.C. Circuit said that a guidance document was a final agency action because its "officials in the field [we]re bound to apply" the agency's position, and the agency would "insist State and local authorities [to] comply with [the position] in setting the terms and conditions of permits." 208 F.3d 1015, 1022 (D.C. Cir. 2000). In *American Academy of Pediatrics v. Kennedy*, the agency's change

12

to immunization schedules exposed healthcare providers to possible liability and risked losses of funding to States. 823 F. Supp. 3d 141, 156-57 (D. Mass. 2026). And in *Philadelphia Yearly Meeting of Religious Society of Friends v. DHS*, the court found that the alleged action was a final agency action "because it withdrew [an] effective safe harbor provided" by a former guidance document. No. CV 25-0243-TDC, 2026 WL 280089, at *5 (D. Md. Feb. 3, 2026). In any event, another judge of this Court disagreed with that conclusion and found that the DHS guidance memo at issue was not final agency action. *See New England Synod*, 824 F. Supp. 3d at 163. And Plaintiffs' characterization of *President's Alliance* is inaccurate: the court held that an agency action could be final despite not having "'mandatory language' expressly directing ICE personnel to terminate SEVIS records under specific circumstances," but that was because the court found that more factual development was necessary to determine whether the alleged action "retract[ed] ICE's discretion to adopt a different view . . . in a way that indicates it is binding." 824 F. Supp. 3d at 199-200. Thus, all these cases confirm the ordinary rule that a final agency action requires a legal consequence, such as something that binds the agency.[3]

## C.    The Case Is Moot.

The Lyons Guidance is no longer in use because of the change in leadership at DHS and will not be used absent further guidance from the Secretary. *See* Castano Decl. ¶ 12. Further, the voluntary cessation doctrine does not apply because the change to "the challenged activity occurs because of reasons unrelated to the litigation." *See, e.g.*, *ACLU of Mass. v. U.S. Conf. of Cath.*

---

[3] Plaintiffs also cite one district court case, decided "at [a] preliminary stage," that says a final agency action exists if an agency "ratif[ies]" an alleged policy by "declin[ing] to disclaim or separate itself from" the policy. *Feitoza v. Noem*, No. 4:26-CV-40011-MRG, 2026 WL 252422, at *3 (D. Mass. Jan. 30, 2026). That opinion is likely incorrect based on *Bennett*'s first prong, but setting that aside, it is unclear what import Plaintiffs wish the Court to gain from this opinion as it provides no explanation of its reasoning, nor explains whether the court assumed the agency mandated the arrests or thought that officers' discretion had been removed.

*Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (citation omitted). Here, the change in policy was due to a change in leadership, so the voluntary cessation doctrine does not apply.

**II.      Plaintiffs Fail to Allege Any Claim Relating to the Lyons Guidance.**

**A.      Plaintiffs Have Not, and Cannot, Demonstrate that They May Assert the Fourth Amendment Rights of Third Parties.**

Even if there were jurisdiction, Plaintiffs cannot bring any claim under the Fourth Amendment because those claims assert the Fourth Amendment rights of others. Plaintiffs' claims ask the Court to find that the Lyons Guidance "violates the Fourth Amendment of the U.S. Constitution," Am. Compl. ¶ 103 (Count I); that it violates agency regulations because it "purports to authorize immigration officers to enter homes without a judicial warrant," Am. Compl. ¶ 110 (Count II); and that Plaintiffs are entitled to a declaration on the same basis. Am. Compl. ¶¶ 131-32 (Count V). And Plaintiffs repeatedly argue that the impact on non-party immigrants' rights matters to this case. *See, e.g.*, Opp. at 12 (arguing the Lyons Guidance "impact[s] [] immigrants' Fourth Amendment rights" and is thus "a legal consequence for the purposes of the final agency action rule"). All these claims depend on the notion that any arrest made using an I-205 by immigration officers violates the Fourth Amendment because I-205s are not judicial warrants.

Plaintiffs cannot make such a claim because, as Defendants previously argued, *see* ECF No. 31, the Supreme Court has explicitly stated that persons may assert only *their own* Fourth Amendment rights because "Fourth Amendment rights are personal in nature" and "may not be asserted vicariously." *Rakas*, 439 U.S. at 133, 140; *see also* ECF No. 31 at 24-25 (collecting cases). The First Circuit has also recognized this holding. *See* ECF No. 31 at 25 (collecting cases). This precedent compels the conclusion that a plaintiff cannot state a claim for relief based on the allegation that others' Fourth Amendment rights have been violated.

14

Plaintiffs do not engage with this precedent at all, thereby waiving any argument that they can assert others' Fourth Amendment rights. *See Three Lower Ctys. Cmty. Health Servs. Inc. v. DHHS*, 517 F. Supp. 2d 431, 434 n.2 (D.D.C. 2007), *aff'd*, 317 F. App'x 1 (D.C. Cir. 2009). Plaintiffs do not explain why they may bring any claim asserting that the use of Forms I-205 violates the Fourth Amendment when no Plaintiff was arrested, nor could any Plaintiff reasonably expect to be arrested pursuant to a Form I-205 because only "aliens subject to a final order of removal [] in their place of residence" may be arrested or detained. *See* Lyons Guidance at 1. Rather, Plaintiffs argue that Defendants "badly mischaracterize" their injuries because "Plaintiffs do not seek to vindicate third parties' individual Fourth Amendment rights" and instead "bring an administrative law claim." Opp. at 10-11; *see also id.* at 19 (arguing that "Plaintiffs are not asserting any Fourth Amendment violation, let alone those of third parties").

But that is wrong. In their Opposition, Plaintiffs repeatedly invoke the Lyons Guidance's alleged impact on others, arguing that "[u]nder the purported authority of [the Lyons Guidance], ICE has arrested people in their homes," *see* Opp. at 1; that "the Lyons [Guidance] has serious legal consequences for immigrants" by "violat[ing] . . . both the Fourth Amendment and immigration regulations," *id.* at 12-13; that the Guidance "has led to warrantless home arrests," *id.* at 13; that the Guidance "encroach[es] on Fourth Amendment rights," *id.* at 22; and that it impacts "[m]any noncitizens with final removal orders [that] have been living in the United States for years." *Id.* at 23. The same is true for their Motion for Summary Judgment and Complaint.[4]

---

[4] Specifically, Plaintiffs' Motion for Summary Judgment asks the Court to "affirm the foundational principle that the government cannot enter private homes without a judicial warrant" because "enter[ing] private homes without judicial warrants . . . violates the Fourth Amendment," ECF No. 27 at 1-2, and argues that the arrests of a third party not part of this lawsuit "proves the failure of DHS Form I-205s to satisfy the Fourth Amendment's reasonable-belief-of-residence requirement in all instances" and "exemplifies the concrete harm" at issue. *Id.* at 17. Plaintiffs' Complaint similarly asks the Court to find that the Lyons Guidance violates the Fourth Amendment because

15

These repeated arguments demonstrate that this action challenges *others'* Fourth Amendment rights were or will be violated. None of Plaintiffs' proposed injuries relate to any violations of Plaintiffs' Fourth Amendment rights, so Plaintiffs cannot seek broad injunctive relief to protect the Fourth Amendment rights of others. Were the Court to follow Plaintiffs' proposed rule, the Supreme Court's holdings in *Rakas* and other cases would be rendered a nullity. That does not align with the Supreme Court's clear command that no one can vicariously assert the Fourth Amendment rights of others. *See, e.g.*, *Rakas*, 439 U.S. at 133, 140.

Along a similar vein, Plaintiffs point out that "Defendants do not cite a single APA case in support of their argument about Fourth Amendment standing." Opp. at 19. That's true, but it simply reinforces the extraordinary theory of this lawsuit. Plaintiffs also do not point to any APA case like this one, where an advocacy plaintiff has successfully bootstrapped alleged informational and reputational injuries onto a Fourth Amendment claim based on alleged violations of others' constitutional rights. And Defendants have found no such case. This fact further demonstrates that the Court should find that Plaintiffs cannot assert a claim based on alleged violations of others' Fourth Amendment rights because no other court has taken that leap.

**B.**     **The Fourth Amendment Allows Administrative Warrants to Be Used in the Manner Described by the Lyons Guidance.**

The Lyons Guidance allows arrests of a limited class of people in a specific location pursuant to an administrative warrant. Specifically, it allows "arrest[s] [of] aliens subject to final

---

"a valid judicial warrant" is needed, Am. Compl. ¶¶ 29-30; alleges that "ICE has entered and made arrests inside homes with only Form I-205s in hand—lacking a valid judicial warrant," *id.* ¶ 71; and includes factual allegations relating to arrests that happened more than one thousand miles away in Minnesota. *See id.* ¶¶ 72-73.

orders of removal in their place of residence." Lyons Guidance at 1. The Supreme Court and Circuit Courts have said that such arrests are permissible under the Fourth Amendment.[5]

Plaintiffs and Defendants agree on several issues, including that the touchstone of the Fourth Amendment is reasonableness and that individuals generally have a reasonable expectation of privacy in their homes. But Plaintiffs propose a bright line rule that does not exist in the case law: that a person must be "charged with or convicted of a crime [to] have a reduced expectation of privacy." Opp. at 20. But that framing of the issue is incorrect. The key question is whether the search is "reasonable" while considering whether there are "special needs, beyond the normal need for law enforcement, [that] make the warrant and probable-cause requirement impracticable," *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (citation omitted), and "balanc[ing] the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context." *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 619 (1989). Under this approach, the Supreme Court has held that "a State's operation of its probation system presented a 'special need' for the 'exercise of supervision to assure that [probation] restrictions are in fact observed.'" *United States v. Knights*, 534 U.S. 112, 117 (2001) (quoting *Griffin*, 483 U.S. at 875).

That analysis tracks cleanly onto the one provided in *Abel* in which the Supreme Court stated that there was "impressive historical evidence" that the practice of issuing administrative warrants to arrest aliens pending deportation proceedings complied with the Fourth Amendment.

---

[5] *See Abel*, 362 U.S. at 234 (noting "the presence of this impressive historical evidence of acceptance of the validity of statutes providing for administrative deportation arrest from almost the beginning of the Nation"); *City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018) ("[F]ederal immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability."); *see also United States v. Lucas*, 499 F.3d 769, 777 (8th Cir. 2007) (en banc) (plurality) (escapee from prison had a more "limited" reasonable expectation of privacy; thus, use of an administrative warrant was valid under the Fourth Amendment).

*See* 362 U.S. at 232-34. To be sure, the Supreme Court stated that this part of the opinion was not a holding because the petitioner "expressly disavowed" the argument in the proceedings below. *See id.* at 230. Yet despite that, it chose to opine on the issue to provide guidance to lower courts, and no subsequent Supreme Court decisions have questioned *Abel*'s reasoning. Plaintiffs remark that post-*Abel* cases "confirm[] the insufficiency of administrative warrants," Opp. at 24, but they do no such thing. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), and *Payton v. New York*, 445 U.S. 573 (1980), stand for the unremarkable proposition that searches and arrests in a home are presumptively unreasonable unless an exception applies. *See Coolidge*, 403 U.S. at 454-55; *Payton*, 445 U.S. at 586-87. Here, the special needs doctrine is such an exception.

Likewise, Plaintiffs argue that DHS's regulations require a judicial warrant instead of an administrative one even though the word "judicial" does not appear there. Opp. at 24. For the reasons stated in Defendants' opening brief, the best reading of the regulation is that the word "warrant" includes an administrative one since that is the exact language that Congress used to describe administrative warrants. *See* ECF No. 31 at 28, 32. Specifically, 8 U.S.C. § 1226(a) states that "a warrant" may be "issued by the Attorney General," a power that has now been transferred to the Secretary through his power to enforce the INA. *See* 8 U.S.C. § 1101 *et seq*. By definition, a warrant issued by an executive officer cannot be a "judicial" warrant.

Further, Plaintiffs misunderstand ICE officers' use of judicial warrants, suggesting that Defendants have not identified why "judicial warrants have suddenly become inadequate." Opp. at 22. But ICE officers have not used judicial warrants to make civil immigration arrests, as Congress provided that DHS should make arrests of aliens pursuant to warrants "issued by the [Secretary]." 8 U.S.C. § 1226(a). The INA does not provide an avenue to use judicial warrants; officers otherwise must wait outside of homes to arrest aliens pursuant to Forms I-205.

18

Plaintiffs also suggest that Defendants should complete a different process—such as sending Forms I-166 to individuals, *see* Opp. at 22—but fail to explain why those affect the Fourth Amendment analysis and whether those methods serve the government's interests equally well. Likewise, Plaintiffs do not respond to Defendants' assertion that facial challenges present a much higher bar than as-applied challenges. ECF No. 31 at 27. They have thus waived any argument to the contrary, and they do not explain why this facial challenge should go forward when any individual arrested pursuant to an I-205 would be able to present similar arguments.

### C.     The Lyons Guidance Is a Procedural Rule, so Notice-and-Comment Rulemaking Is Unnecessary.

The Lyons Guidance—an internal document reminding agents to choose among "all available enforcement mechanisms, including the use of a Form I-205" when making "arrest[s] [of] alien[s] in their place of residence . . . in accordance with applicable law and policies," Lyons Guidance at 2—is not a substantive rule as it is an "internal house-keeping measure[] organizing agency activities," *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987) (citation omitted), that does not "alter the rights or interests of parties." *AFL-CIO v. NLRB*, 57 F.4th 1023, 1034 (D.C. Cir. 2023) (citation omitted). Instead, the Lyons Guidance is more akin to an interpretive rule because it merely interprets authorities that have long existed—including *Abel*, the INA, and DHS's governing regulations—to determine that those "do not prohibit relying on administrative warrants" to "arrest aliens subject to final orders of removal in their place of residence." Lyons Guidance at 1; *cf. N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018) (interpretive rules that advise the public of an agency's construction of its governing authority do not require notice-and-comment rulemaking).

Plaintiffs argue that the Lyons Guidance is substantive for similar reasons as they argued for why the Lyons Guidance was a final agency action. *See* Opp. at 25-26. As discussed above, the

Lyons Guidance does not alter or substantially affect anyone's legal rights. *See supra* 10-13. And unlike a rule requiring notice-and-comment rulemaking, the Lyons Guidance does not "create[] rights, assign[] duties, or impose[] obligations." *See N.H. Hosp.*, 887 F.3d at 70 (citation omitted).

Finally, Plaintiffs repeat their argument that the Lyons Guidance is inconsistent with the Department's regulations because they view 8 C.F.R. § 287.8(c)(2)(ii) and (f)(2) as requiring a "judicial" warrant. *See* Opp. at 26. But that is incorrect: the best reading of the word "warrant" means administrative warrant. *See supra* 18. Nothing else that Plaintiffs cite—training materials and standard operating procedures, *see* Opp. at 26—are regulations.

## III.   The Court Should Dismiss Count III.

Plaintiffs argue that the Court "cannot" dismiss their claim that the Lyons Guidance is arbitrary and capricious. Opp. at 26. But that's incorrect. As discussed, *see supra* 10-13, the Lyons Guidance is not a final agency action, so there is no judicial review. *See* 5 U.S.C. § 704.

Further, even at the motion to dismiss stage, Plaintiffs must "contain sufficient factual matter" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' complaint thus must provide factual matter demonstrating that Defendants did not "act[] within a zone of reasonableness" and that does not ask the court to "substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Here, Plaintiffs have not done that—following the INA's language allowing the issuance of administrative warrants and the Supreme Court's statements in *Abel* are the most reasonable construction of Defendants' legal authority, and Plaintiffs provide no information regarding what reliance interests allegedly existed before the Lyons Guidance was issued. So the Court should dismiss Count III of the Complaint.

### CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

Dated: August 4, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER K. HAAS
Branch Director
Federal Programs Branch

ANDREW WARDEN
Assistant Branch Director
Federal Programs Branch

/s/ *J. Stephen Tagert*
J. STEPHEN TAGERT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel.: (202) 305-5486
stephen.tagert@usdoj.gov
*Counsel for Defendants*

21